## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

KPH HEALTHCARE SERVICES, INC., )
a/k/a KINNEY DRUGS INC., )
FWK HOLDINGS LLC, )
and CÉSAR CASTILLO, LLC, )
*individually and on behalf of all those* )
*similarly situated*, )
                )
         Plaintiffs, )
                )
v.               )      **Case No. 2:20-cv-02065-DDC-TJJ**
                )
                )
MYLAN, N.V., MYLAN )
PHARMACEUTICALS INC., MYLAN )
SPECIALTY L.P., PFIZER, INC., )
KING PHARMACEUTICALS, INC., )
and MERIDIAN MEDICAL )
TECHNOLOGIES, INC., )
                )
         Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Requests for Production of Documents (ECF No. 175). Plaintiffs seek an order requiring Defendants to search for and produce documents responsive to their First Requests for Production of Documents. Mylan[1] opposes the motion.[2] As set forth below, the Court will grant the motion in part and deny it in part.

---

[1] The Court will refer to Mylan, N.V.; Mylan Pharmaceuticals Inc.; and Mylan Specialty L.P. as "Mylan."

[2] Although the Pfizer Defendants (Pfizer, Inc.; King Pharmaceuticals, Inc., and Meridian Medical Technologies, Inc.) filed a response opposing the motion, District Judge Crabtree has granted Pfizer Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint (ECF No. 134), thereby making moot Plaintiffs' request for relief against Pfizer.

## I.      Relevant Background

On November 25, 2021, following Mylan's production to Plaintiffs of the documents Defendants had produced in the MDL,[3] Plaintiffs served their First Set of Document Requests to Mylan. In conjunction with these requests, Plaintiffs have identified four new custodians and 18 new search strings, and have asked Mylan to produce documents created after 2016, which was the cutoff for Mylan's document production in the MDL. Mylan has declined these requests. In addition to seeking an order compelling Mylan to comply with their discovery requests, Plaintiffs challenge certain entries on Mylan's MDL privilege log.

Plaintiffs recount the parties' efforts to resolve their differences through numerous meetings and exchanges of letters over several weeks. Mylan's response also refers to the parties' communications. Ultimately, Plaintiffs were not satisfied with Mylan's responses and this motion followed. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II.     Summary of the Parties' Arguments

Plaintiffs contend that Mylan has agreed to search for and produce only a narrow subset of the twelve categories of documents Plaintiffs have requested. Mylan objected to any further production on grounds of duplicity, burdensomeness, and proportionality. After conferring, Plaintiffs requested Mylan add four new records custodians and apply search terms to capture and produce documents created after August 23, 2016. Mylan rejected the request on the basis

---

[3] *In re EpiPen (Epinephrine Injection USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ (D. Kan.) (hereinafter referred to as *In re EpiPen*).

that requiring searches of these individuals' files would not yield unique results and would be burdensome and disproportional to the needs of the case.

Plaintiffs also asked Mylan to apply certain MDL search terms and eighteen new search strings to existing and newly collected documents that Plaintiffs contend are relevant to the claims or issues in this case. Mylan rejected the proposal, asserting Plaintiffs had not tied those search terms to the pending discovery requests. Mylan also declined to agree to produce documents created after 2016, asserting it has produced relevant responsive documents and Plaintiffs have not demonstrated a justifiable basis for the request. Plaintiffs deny Mylan has provided information regarding the size, scope, or actual burden associated with complying with Plaintiffs' requests.

Plaintiffs also challenge certain entries on Mylan's privilege log which it first produced in the MDL and has provided to Plaintiffs in this case. Plaintiffs contend Mylan has not met its burden to show that communications between Mylan and Pfizer before July 2013 satisfy the "common interest doctrine" as it relates to the Teva patent and other patent litigations. Mylan disagrees, asserting it and Pfizer have substantially identical legal interests in protecting the validity and enforceability of the EpiPen patents. In addition, Plaintiffs allege Mylan's privilege log makes an insufficient showing that certain communications were made for the purpose of seeking or giving legal advice. Mylan disagrees.

## III.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery and provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its
> likely benefit. Information within this scope of discovery need not
> be admissible in evidence to be discoverable.[4]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[5] Information still "need not be admissible in evidence to be discoverable."[6] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[7] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[8] Relevancy determinations are generally made on a case-by-case basis.[9]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[10] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the

---

[4] Fed. R. Civ. P. 26(b)(1).
[5] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[6] Fed. R. Civ. P. 26(b)(1).
[7] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[8] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).
[9] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 203*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[10] *Stonebarger v. Union Pac. RR Co*., No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

discovery."[11] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[12]

As this action arises under a federal statutory scheme, federal law provides the rule of decision regarding application of the attorney-client privilege. The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[13] Under the law of this circuit, an attorney's communication to a client is also protected if it is "related to the rendition of legal services and advice."[14] The party asserting the privilege bears the burden of establishing its existence.[15]

Although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[16] The communication is protected from disclosure only if a connection exists between the subject of the communication and the rendering of legal advice,[17]

---

[11] *Id.*
[12] *Id.*
[13] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).
[14] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").
[15] *Lewis v. UNUM Corp Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001) (citing *Great Plains Mut. Ins. Co. v. Mut. Reins. Bureau*, 150 F.R.D. 193, 196 (D. Kan. 1993)).
[16] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000).
[17] *Burton v. R.J. Reynolds Tobacco Co.,* 175 F.R.D. 321, 328 (D. Kan. 1997) *("Burton II").*

and legal advice "must predominate for the communication to be protected."[18]

## IV.    Analysis

There is no dispute that Mylan has produced to Plaintiffs its entire MDL production. But that production, while unquestionably extensive, was never intended to supplant original discovery in this case. Accordingly, after Plaintiffs reviewed the MDL production, they served a first set of requests for production of documents on Mylan. The following areas of dispute remain following the parties' efforts to narrow and resolve their differences.

### A.    Whether Defendants must produce documents through the present

Plaintiffs describe their document requests to Mylan as falling into three categories by subject matter, and explain why documents responsive to these requests post-dating August 23, 2016 are relevant. Plaintiffs contend RFP Nos. 3-5, 10, 13, and 15-17 seek documents relating to the scope of the relevant market, EpiPen's market share, Defendants' alleged monopoly power, and Plaintiffs' and class members' damages. As Plaintiffs point out, they seek aggregate damages resulting from Defendants' alleged antitrust violations to the present. To establish their damages, Plaintiffs' expert intends to rely on documents concerning the scope of the relevant market, market dynamics, and pricing strategy.

Plaintiffs describe the second category of requests, RFP Nos. 6-9 and 11, as seeking documents that concern Mylan's relationship with Pfizer relating to the production, distribution, marketing, and sale of EpiPens. This information, Plaintiffs assert, is relevant and necessary for them to accurately calculate the damages to be applied to the Direct Purchaser class for the entire

---

[18] *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (*"Burton I"*).

period for which they seek damages, determine relevant market, and determine Mylan's response to actual or perceived generic competition.

Finally, Plaintiffs describe the third category of requests as documents sufficient to identify all direct purchasers of EpiPens and generic EpiPens (RFP No. 12), transaction-level sales data concerning Mylan's sale of EpiPens and generic EpiPens (RFP No. 14), and monthly data regarding EpiPen pricing, sales, costs, and profitability (ECF No. 18). In response to this last category, Mylan agreed to produce transaction-level sales data through December 2020 and to produce pricing, sales, cost, and profitability data through 2018. But Plaintiffs assert they are entitled to current data, again for the purpose of proving damages.

Mylan objected to producing documents to the present as overly broad, unduly burdensome, and not proportional to the needs of the case.[19] Mylan describes what it has agreed to produce in the way of transactional and financial data, but does not deny Plaintiffs' description of what it has refused to produce.

The Court is persuaded that documents created to the present are proportional to the needs of the case for the reasons Plaintiffs assert. Mylan's protestations to the contrary are just that. For instance, Mylan reports having offered to stipulate to the relevant market in exchange for Plaintiffs withdrawing five RFPs. But Plaintiffs are entitled to obtain the documents called for in the RFPs at issue, which seek information beyond simply defining the relevant market. And Mylan's agreement to produce contracts and agreements between Mylan and wholesale distributors with respect to EpiPen sales in the United States does not provide Plaintiffs with

---

[19] Although Pfizer objected that the period since 2018 encompasses documents not relevant to claims or defenses in the case, Mylan did not adopt that objection and the Court will not consider it.

documents to which they are entitled regarding direct purchasers. Clearly, Mylan's agreements with direct purchasers—not simply those with wholesaler distributors—providing for discounting, pricing, and/or rebating, are pertinent to Plaintiffs' damages model to show what direct purchasers actually paid for EpiPen. Mylan is not the arbiter of what evidence Plaintiffs should need to support their claims.

Plaintiffs urge the Court to reject Mylan's refusal to produce documents to the present because in the MDL, over its objection Mylan was required to respond to discovery beyond August 23, 2016.[20] The situations are not sufficiently analogous and the Court will not decide this motion on the basis of the MDL ruling.

The Court rejects Mylan's objection that producing responsive documents to the present would be unduly burdensome. Mylan has not provided evidentiary support for a finding that production would be unduly burdensome in light of the relevant information it would provide to Plaintiffs, and its conclusory assertion of burden is not sufficient to sustain the objection.

Seeking documents to the present does not make these requests overly broad, nor are they disproportionate to the needs of the case. The Court grants Plaintiffs' motion insofar as it seeks an order requiring Mylan to search for and produce relevant and responsive documents through the present, except for those categories Plaintiffs have noted.

**B.     Whether Mylan's ESI search shall include new custodians and search terms**

Plaintiffs have asked Mylan to expand its ESI search by adding four custodians and applying search terms not used in the MDL production. The Court considers each issue in turn.

**1.     Custodians**

---

[20] *See* Memorandum and Order, *In re EpiPen*, 2018 WL 438479, at *1 (D. Kan. Sept. 21, 2018).

Plaintiffs seek to add four custodians to Mylan's ESI search, all of whom are or were Vice President level executives. Kim Brooks, who was Vice President of Finance at Mylan Specialty from approximately 2013 until 2015, was involved in commercial planning, forecasting, and strategy related to EpiPen. She was also involved in Mylan's response to competitive threats to the EpiPen franchise, and may have been the liaison between Mylan and Meridian concerning the payment of royalties and rebates related to the EpiPen Supply Agreement. Mylan downplays her involvement, saying Ms. Brooks spent much of her time working for Mylan Pharmaceuticals Inc., an entity that has nothing to do with EpiPen products. Mylan contends that Plaintiffs have only demonstrated Ms. Brooks was merely copied on communications with other MDL custodians or received copies of certain documents produced in the MDL, which means she does not have relevant, unique documents. But Plaintiffs logically assert that just because some communications involving Ms. Brooks appear in custodial files of other Mylan witnesses does not mean she has no relevant communications. The Court agrees Ms. Brooks should be added as a custodian.

Plaintiffs next address Joseph Carrado, the former Vice President, Clinical and Regulatory Affairs and voting member of the Joint Commercial Committee designed to streamline distribution of EpiPen products. Mr. Carrado is regularly included on communications pertaining to the Joint Commercial Committee. Again, Mylan contends Mr. Carrado does not possess unique documents, but Plaintiffs disagree because in his role as a top regulatory officer, Mr. Carrado consulted with respect to FDA's drug approval process and the potential patent position Mylan could take in response to Teva's ANDA. In the MDL, Pfizer's Executive Director of EpiPen Global Marketing testified that Mr. Carrado was the Mylan employee who

provided the analysis on Teva filing and Pfizer's patent position. The Court finds Mr. Carrado should also be added as a custodian.

Third, Plaintiffs seek to add Ron Graybill, former Vice President of Managed Markets and member of Mylan's EpiPen pricing committee that had final authority on drug pricing decisions. Mr. Graybill is included in witnesses who may be deposed under the Deposition Protocol this Court approved.[21] Mylan protests that Mr. Graybill's involvement in the MDL, which Plaintiffs mention, was on topics that have nothing to do with Plaintiffs' claims. But that does not lessen the likelihood that Mr. Graybill's role on the committee with ultimate decision-making power over drug pricing suggests he also possesses documents not otherwise retrieved. The Court finds Mr. Graybill is a proper custodian.

Finally, Plaintiffs seek to add Satish Medakkar, former Vice President, Head of Global Commercial Analytics & Insights. Plaintiffs assert that documents produced in the MDL show Mr. Medakkar's primary function was gathering, analyzing, and sharing competitive intelligence related to EpiPen and the EAI market. Mylan argues Plaintiffs have failed to demonstrate why the documents they produced in the MDL do not satisfy Plaintiffs' RFPs on these topics. But Plaintiffs point to Mr. Medakkar's role as leader of a team responsible for intelligence gathering and as the person who contacted third parties to obtain competitive intelligence on Teva. The Court agrees Mr. Medakkar is also a proper custodian.

### 2. Additional search terms

Plaintiffs have proposed new ESI search terms to Mylan, none of which Mylan has agreed to run. The first is a set of four search terms ("Armodafinil", "570 Patent," "516 Patent,"

---

[21] ECF No. 158 at 3.

"7,132,570 B2," and "RE37, 516 E") which Plaintiffs want Mylan to run against the collection of documents from nine custodians in the MDL and the four new custodians discussed above.[22] Plaintiffs assert the relevance of these terms is self-evident because (1) the patents and patent numbers relate to the patents at issue in the Teva litigation, and (2) Armodafinil is another name for Nuvigil, which is at issue in Plaintiffs' pay-for-delay claim.

Plaintiffs also propose 18 new searches they view as likely to identify documents relevant to the claims and defenses still at issue in this case and covering topics not addressed in the MDL. Plaintiffs ask Mylan to apply the searches to the documents of the same nine custodians whose documents were examined in the MDL. Mylan contends the proposed searches are overbroad, unduly burdensome, and duplicative of prior MDL requests and productions, and suggests Plaintiffs must demonstrate how the already-produced MDL documents are deficient in fully responding to Plaintiffs' RFPs. Mylan's last argument is easily dispatched. A party is not required to demonstrate that it lacks potentially relevant but unidentifiable documents before it propounds discovery aimed at finding those documents. Plaintiffs do not know what documents exist in any custodian's records, and thus cannot identify what might be missing from the documents produced in the MDL. Moreover, it is illogical that searches tailored to the claims in the MDL would produce the precise documents Plaintiffs seek in this case. Plaintiffs are attempting to bridge the gap through the use of different search terms. The Court overrules Mylan's objection that the search terms are overbroad or duplicative of prior MDL requests and productions.

---

[22] Mylan grouped custodians by batches in the MDL. The nine custodians Plaintiffs target in this search were in "Batch 1," which comprised 25 custodians.

As Plaintiffs explain it, Mylan did not produce the MDL search strings until three months after Plaintiffs served their RFPs. Plaintiffs then began a series of meet-and-confer sessions with Mylan regarding search terms. Because Plaintiffs did not know what search terms existed in the MDL when they served their RFPs, they did not know the patent terms had not been included. Plaintiffs believed Mylan agreed that negotiating search terms all at once was the most efficient way to handle the issue and the parties did in fact negotiate about each, but Mylan now objects that four of Plaintiffs' proposed search strings are invalid because they are not tied to a particular RFP. Plaintiffs offer to serve additional RFPs directly referencing the patent litigation and settlements, but the Court concludes the efficiency mandated by Rule 1 makes that additional step unnecessary. The parties have met and conferred on the issue. The Court will not deny the motion on the basis that four of the proposed search strings are not tethered to Plaintiffs' RFPs.

In support of its claim of undue burden, Mylan offers is a single sentence: "[R]unning only a portion of Plaintiffs' proposed searches would result in 367,717 new documents to review."[23] But Mylan does not explain how it arrived at that figure, how long it would take to run the search, what portion of the proposed searches would yield that number of documents, the cost in terms of money or personnel time, or any other detail. More importantly, the assertion does not come from an affidavit or declaration, which renders it devoid of evidentiary value. Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or

---

[23] ECF No. 182 at 16.

12

expense involved in responding to the discovery request.'"[24] The Court overrules Mylan's claim of undue burden.

### C.    Whether Mylan has waived privilege over certain documents

Plaintiffs raise two challenges to Mylan's privilege log. The first is whether Mylan waived privilege by sharing attorney-client communications with Pfizer, and the second is whether Mylan adequately supported its asserted privilege in certain entries. The Court considers each in turn.

#### 1.    Common Interest Doctrine

Mylan has asserted attorney-client privilege over and has withheld from production certain documents it shared with Pfizer before July 2013.[25] Plaintiffs contend Mylan waived its privilege by sharing the documents. Mylan counters that the common-interest doctrine precludes waiver because any confidential information that was disclosed was to a third party who shares a community of interest with the represented party. Plaintiffs challenge application of the doctrine.

"Courts in this district and elsewhere treat the common-interest doctrine 'not as a separate privilege, but as an exception to waiver of the attorney-client privilege' which 'acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests.'"[26] "To fit within the protection, communications must be made in the course of a joint effort with respect to a common legal interest and for the purpose of furthering

---

[24] *Stonebarger*, 2015 WL 64980, at *5 (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[25] To be clear, Mylan also claims protection via the common interest doctrine for documents created after July 2013, but from that date forward Plaintiffs do not challenge Mylan's assertion of the doctrine.

[26] *Greenfield v. Newman Univ., Inc.*, No. 2:18-cv-02655-DDC-TJJ, 2020 WL 6559424, *3 (D. Kan. Nov. 9, 2020) (quoting *Sawyer v. Sw. Airlines*, Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442, *3 (D. Kan. Dec. 23, 2002) (internal citations omitted)).

that effort."[27]

"A community of interest exists where different persons or entities 'have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . . The key consideration is that the nature of the interest be identical, not similar.'"[28]

Mylan argues the proper standard is not whether it shared an "identical" legal interest with Pfizer, but whether they shared "substantially identical" legal interests. Mylan relies on *High Point SARL v. Sprint Nextel Corporation*, No. 09-2269-CM-DJW, 2012 WL 234024 (D. Kan. Jan. 25, 2012) for its argument. In *High Point*, Magistrate Judge Waxse was persuaded that the nature of the action – a patent case – warranted a departure from previous rulings requiring legal interests to be identical, and he applied the less strict "substantially identical legal interest" standard when deciding the common interest exception.

Having fully considered the case law, the Court will not adopt Judge Waxse's conclusion in *High Point*. When he considered whether Federal Circuit or Tenth Circuit law applies to determine waiver, Judge Waxse recognized that courts generally look to Federal Circuit law when deciding issues unique to patent law, but on non-patent issues a court applies the law of the circuit in which the district court sits.[29] Because "[t]he issue of waiver itself and the scope of that waiver as it applies to other documents does not fall exclusively in the realm of patent law,"

---

[27] *Greenfield*, 2020 WL 6559424 at *3 (quoting *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007)).
[28] *Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230-31 (D.N.J. 1992)). *See also Lawson v. Spirit Aerosystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019) (courts generally require the nature of the parties' common interest be identical, not similar, and be legal, not solely commercial).
[29] *High Point*, 2012 WL 234024, at *6.

14

Judge Waxse determined Tenth Circuit law on waiver of attorney-client privilege should be applied.[30] Although he cited one of his own cases that reflects the state of Tenth Circuit law that the "key consideration" is whether the nature of the interest is identical, not similar, and legal, not solely commercial,[31] after discussing patent cases from other circuits, Judge Waxse concluded the briefing and affidavits submitted by the non-party entity asserting the privilege had "sufficiently shown that it had a substantially identical common legal interest in the validity, enforceability, and potential for infringement of the patents-in-suit at the time it disclosed the communications to . . . prospective patent purchasers."[32]

This Court feels bound by Tenth Circuit law, as set forth in *Frontier Refining,* to apply the "identical" legal interest standard in analyzing whether a shared common interest excuses waiver of a privilege. The Federal Circuit confirms this approach, as it also applies the perceived law of the regional circuit in deciding procedural matters not unique to patent issues, including the scope of the attorney-client privilege.[33]

In contrast to a situation in which identical legal interests exist, the weight of authority holds that a shared desire to prevail in litigation does not amount to a common legal interest justifying application of the common-interest doctrine.[34] In July 2013, Pfizer transferred the underlying patents to Mylan. Pfizer also transferred the New Drug Application ("NDA") for various EpiPen products to Mylan, but retained a right of reversion in the event the supply

---

[30] *Id.*

[31] *Sawyer v. Sw. Airlines*, 2002 WL 31928442.

[32] *High Point*, 2012 WL 234024, at *9.

[33] *See In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996).

[34] *Lawson*, 410 F. Supp. 3d at 1210; *see also Cessna Fin. Corp. v. Jetsuite, Inc.*, No. 18-1095-EFM-KGG, 2020 WL 1862577, at *2 (D. Kan. Apr. 14, 2020) (entities that have arguably established a common desire for the same outcome in an action do not establish common interest).

agreements were terminated. The operative agreements prior to that transfer stated that Pfizer retained all intellectual property rights to its patents, and retained full responsibility for taking "all actions reasonably necessary to diligently prosecute and maintain any patents or patent applications relating to the products."[35] These undisputed facts lead the Court to conclude that while Mylan and Pfizer had a shared desire to prevail in any potential litigation regarding the patents before July 2013, they did not have an identical legal interest until the transfer was effectuated.

For documents prepared before July 2013, the Court finds Mylan has not sufficiently shown it shared identical legal interests with Pfizer. Mylan offers no evidentiary basis for its assertion that "Mylan and Pfizer have at all relevant times shared an identical interest—or at the very least a substantially identical interest—in EpiPen products, including but not limited to an identical legal interest in protecting the intellectual proper relating to EpiPen devices."[36]

Accordingly, the Court finds Mylan must produce the Mylan-Pfizer communications and documents dated or exchanged before July 1, 2013, and previously withheld on grounds of attorney-client privilege and the common interest doctrine.

## 2.      Mylan's support for documents covered by attorney-client privilege

Plaintiffs claim they cannot determine whether Mylan's claim of attorney-client privilege for 1,493 documents on its MDL privilege log is warranted because the descriptions for each are too sparse. But Plaintiffs point to only two entries which they deem short of the required evidentiary showing to support their argument. Not only does the Court find those two entries are not problematic, but such weak support convinces the Court no further examination is necessary.

---

[35] ECF No. 178-a at 36-37.
[36] ECF No. 182 at 26.

And as Mylan points out, the privilege log was the end product of painstaking document reviews and negotiations among the MDL parties with much court supervision. Without further discussion, the Court denies Plaintiffs' motion with respect to its claim that Mylan has waived privilege objections for the 1,493 documents at issue.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Requests for Production of Documents (ECF No. 175) is granted in part and denied in part. Specifically, the motion is (1) **GRANTED** insofar as it seeks an order requiring Mylan to search for and produce relevant and responsive documents through the present, except for those categories Plaintiffs have noted; (2) **GRANTED** insofar as it seeks an order requiring Mylan is to collect documents from Joseph Carrado, Satish Medakkar, Kim Brooks, and Ron Graybill; (3) **GRANTED** insofar as it seeks an order requiring Mylan to apply the search strings proposed by Plaintiffs; (4) **GRANTED** insofar as it seeks an order requiring Mylan to produce documents shared between Pfizer and Mylan that were created before July 2013 and appear on its privilege log; and (5) **DENIED** insofar as it seeks an order requiring Mylan to produce the 1,493 documents on its privilege log described by Plaintiffs. Mylan shall produce responsive documents within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

Dated this 23rd day of August, 2022 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge