IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KPH HEALTHCARE SERVICES, INC., a/k/a KINNEY DRUGS INC., FWK HOLDINGS LLC, and CÉSAR CASTILLO, LLC, *individually and on behalf of all those similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MYLAN, N.V., MYLAN PHARMACEUTICALS INC., MYLAN SPECIALTY L.P., PFIZER, INC., KING PHARMACEUTICALS, INC., and MERIDIAN MEDICAL TECHNOLOGIES, INC., <br><br> Defendants. | Case No. 2:20-cv-02065-DDC-TJJ |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Mylan Defendants' Motion to Compel Discovery From Plaintiffs (ECF No. 224). Mylan seeks an order requiring Plaintiffs to amend certain of their responses and produce documents responsive to Mylan's First Set of Document Requests to All Plaintiffs, and to amend certain of their responses to Mylan's First Set of Interrogatories to All Plaintiffs. Plaintiffs oppose the motion.[1] As set forth below, the Court will grant the motion in part and deny it in part.

**I.   Relevant Background**

---

[1] *See* ECF No. 235.

On April 1, 2022, Mylan served its First Set of Documents Requests to All Plaintiffs and its First Set of Interrogatories to All Plaintiffs.[2] Mylan's RFPs included 57 directed to all Plaintiffs as well as additional requests directed to each of the three individual Plaintiffs. Mylan directed 18 Interrogatories to Plaintiff KPH, 17 to Plaintiff FWK, and 15 to Plaintiff César Castillo, LLC ("Castillo"). Each Plaintiff timely responded. The parties met and conferred several times during the following weeks, resulting in Plaintiffs amending and supplementing their responses to certain Interrogatories. Although the parties also addressed their differences over certain RFPs during their conferral process, as of the filing of this motion Plaintiffs had produced no documents responsive to any RFP.

Mylan recounts the parties' efforts to resolve their differences through numerous exchanges of written correspondence over several weeks. Ultimately, the parties reached an impasse and this motion followed. Based on the parties' efforts, the Court finds they have complied with the requirements of D. Kan. R. 37.2.

**II.     Summary of the Parties' Arguments**

Mylan organizes its motion by discussing Plaintiffs' common objections to each of the six general categories of the discovery at issue. Plaintiffs' original response included objections that: (1) Mylan's downstream discovery requests are irrelevant as a matter of law and unduly burdensome; (2) requests focused on the typicality of FWK's claims and FWK's adequacy to serve as a class representative are irrelevant; (3) discovery related to KPH's status as McKesson's assignee is privileged; (4) requests seeking documents relating to communications Plaintiffs have had with the parties, counsel, or retained experts in *In re: EpiPen (Epinephrine*

---

[2] *See* ECF No. 180.

*Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-md-2785 (D. Kan.) ("the MDL") or in another direct purchaser action pending in the District of Minnesota ("the Minnesota case") regarding EpiPen or any action or potential claims or defenses in this action, are privileged; and (5) requests to KPH regarding its assignment from McKesson and to FWK seeking transcripts of deposition testimony from FWK relating to another putative class action are confidential. Mylan retains its challenges to these objections and although Plaintiffs have withdrawn certain objections, Mylan asks the Court to order Plaintiffs' compliance. Finally, Mylan seeks supplemental answers to certain interrogatories to which it contends Plaintiffs have not fully responded. Plaintiffs agree to supplement an interrogatory to FWK, maintain objections to an interrogatory to Castillo, and argue they have sufficiently answered interrogatories posed to all Plaintiffs.

### III. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery and provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[3]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[4]

---

[3] Fed. R. Civ. P. 26(b)(1).
[4] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Information still "need not be admissible in evidence to be discoverable."[5] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[6] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[7] Relevancy determinations are generally made on a case-by-case basis.[8]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[9] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[10] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[11]

As this action arises under a federal statutory scheme, federal law provides the rule of decision regarding application of the attorney-client privilege. The essential elements of the

---

[5] Fed. R. Civ. P. 26(b)(1).
[6] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[7] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).
[8] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 203*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[9] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).
[10] *Id.*
[11] *Id.*

attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.[12] Under the law of this circuit, an attorney's communication to a client is also protected if it is "related to the rendition of legal services and advice."[13] The party asserting the privilege bears the burden of establishing its existence.[14]

Although the privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney.[15] The communication is protected from disclosure only if a connection exists between the subject of the communication and the rendering of legal advice,[16] and legal advice "must predominate for the communication to be protected."[17]

**IV.    Analysis**

Plaintiffs' response reflects their agreement to withdraw certain objections, produce responsive documents, and provide a privilege log. The following areas of dispute remain following the parties' efforts to narrow and resolve their differences.

---

[12] *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009).
[13] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 2192885, at *5 (D. Kan. July 25, 2007) ("The privilege applies to communications from the client to the attorney and from the attorney to the client.").
[14] *Lewis v. UNUM Corp Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001) (citing *Great Plains Mut. Ins. Co. v. Mut. Reins. Bureau*, 150 F.R.D. 193, 196 (D. Kan. 1993)).
[15] *IMC Chemicals, Inc. v. Niro, Inc.*, No. 98-2348, 2000 WL 1466495, at *8-9 (D. Kan. July 19, 2000).
[16] *Burton v. R.J. Reynolds Tobacco Co.,* 175 F.R.D. 321, 328 (D. Kan. 1997) *("Burton II")*.
[17] *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997) (*"Burton I"*).

### A.   Downstream Discovery

Mylan served fifteen RFPs to all Plaintiffs which it describes as being tailored to the goal of discovering evidence relevant to whether Plaintiffs' interests conflict with the interest of other putative class members.[18] More specifically, Mylan seeks to discover information about Plaintiffs: "who they are, their business models, whether they benefited from the price increases alleged in the operative complaint, whether distributing the generic pharmaceuticals they claim were 'delayed' is more or less profitable than distributing branded products like [EpiPen], and so on."[19] Plaintiffs objected to these requests on multiple grounds, but at issue here is their Downstream Objection based on relevancy. Plaintiffs define their Downstream Objection as follows:

> Document Requests that seek documents or information related to Plaintiffs' own sales, prices or profits [are objectionable] because "downstream" discovery is irrelevant as a matter of law in a case brought by direct purchasers as established by the Supreme Court in *Hanover Shoe v. United Shoe Machinery Corp.,* 392 U.S. 481 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Under these controlling cases, Direct Purchasers are entitled to recover the "full amount" of an overcharge, and inquiry into the "downstream" effects of the overcharge – including, for example, inquiry into Plaintiffs' own prices, sales, and profits – is irrelevant as a matter of law. . . . Plaintiffs also object to Document Requests seeking downstream discovery because the collection and production of the requested documents is more burdensome and expensive than beneficial and is not proportional to the needs of the case.[20]

Mylan does not dispute that *Hanover Shoe* and *Illinois Brick* "stand for the proposition that a direct purchaser suffers cognizable antitrust injury and may recover the full amount of an illegal overcharge regardless of whether it passed some or all of the overcharge on to its

---

[18] RFP Nos. 26-27, 36, 38, 40, 42, 44-51, and 73
[19] ECF No. 225 at 5-6.
[20] ECF No. 225-13 at 3-4.

customers."[21] But Mylan denies it is seeking downstream discovery to show Plaintiffs have not suffered antitrust injury or that Plaintiffs passed on any part of the allegedly inflated price to a subsequent purchaser. Instead, Mylan's stated purpose in seeking this discovery is to assess whether Plaintiffs' interests are antagonistic to or in conflict with the interests of other putative class members, a material issue in determining class certification.[22] Mylan relies primarily on two cases: *In re Urethane Antitrust Litigation*, 237 F.R.D. 454, 462-63 (D. Kan. 2006) ("*Urethane I*"); and *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1195 (11th Cir. 2003).

*Urethane I* was a ruling by Magistrate Judge Waxse on a motion to compel filed by defendants in an antitrust action brought by direct purchasers of polyether polyol products against manufacturers. Defendants' document requests related to policies regarding sales and purchasing decisions, information regarding purchases and the purpose for which the product was used, communications with manufacturers or distributors of polyether polyol end-products, information regarding product market conditions, sales volume, and identification of customers. Defendants argued the requests were intended to obtain information relevant to class certification issues, specifically predominance of common questions of law and fact, typicality of plaintiffs' claims, and whether plaintiffs would be adequate class representatives.[23] Judge Waxse noted the

---

[21] ECF No. 225 at 7.
[22] Mylan actually says it seeks this discovery from Plaintiffs "to, among other things, assess whether a class should be certified." *Id*. In the portion of its Reply directed to this issue, Mylan argues the Court "should allow Mylan to discover relevant evidence bearing on class certification or any defenses, like Mylan's statute of limitations defense, that are unrelated to a pass-on defense." ECF No. 245 at 5. But Mylan offers no explanation for how downstream discovery is relevant to its statute of limitations defense, and the Court limits its analysis to Mylan's argument that downstream discovery is relevant to whether a class should be certified.
[23] 237 F.R.D. at 459-64.

7

motion before him was limited to whether discovery should be permitted, and his ruling would not determine whether a class would be certified. Moreover, Judge Waxse noted, he would not be ruling on class certification. As a result, he believed it "particularly inappropriate for this Court to limit discovery based on this Court's determinations of the proper scope of a potential class. It is this Court's duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination."[24]

The *Urethane I* plaintiffs argued against allowing discovery of downstream data. After analyzing the cases plaintiffs relied on, however, Judge Waxse concluded the cases "stand for the proposition that discovery of downstream data is not relevant to proving or disproving an underlying claim of antitrust violations."[25] And because defendants were not seeking discovery of data for purposes of supporting a pass-on defense, but instead because the asserted relevance was to class certification,[26] Judge Waxse overruled plaintiffs' objections.

*Valley Drug* is a case from the Eleventh Circuit reversing a grant of class certification. Plaintiffs were regional wholesalers seeking to represent a nationwide class in an action alleging unlawful patent settlements. The district court interpreted *Hanover Shoe* and *Illinois Brick* to preclude downstream discovery related to whether some class members benefitted from the conduct alleged to have harmed the class members on the whole. The Eleventh Circuit remanded the case for the discovery to go forward because it was relevant to class certification and neither *Hanover Shoe* nor *Illinois Brick* "imbue[d] the named representatives . . . with the automatic

---

[24] *Id.* at 459.
[25] *Id.* at 463.
[26] Specifically, defendants maintained the discovery bore on commonality, typicality, and the adequacy of plaintiffs to serve as class representatives. *Id.* at 464.

right to certify a class where the economic reality of the situation reveals that a fundamental conflict may exist among the class members."[27]

Mylan asserts *Valley Drug* is particularly pertinent because defendants there had presented "evidence that the cognizable antitrust injury suffered by [absent class members] may have been outweighed by the economic benefits [they] experienced in the absence of generic competition," leading to a situation where absent class members may have had "divergent interests and objectives from the named representatives with respect to the fundamental issues in controversy."[28] Because defendants had raised the potentiality of antagonistic interests between proposed representatives and the rest of the class, the Eleventh Circuit concluded the record below did not support class certification.[29]

Mylan asserts the three largest absent putative class members in this case are essentially the same three national wholesalers discussed in *Valley Drug*. Mylan also points to references in the operative complaint to the frequency and rate of Mylan's price increases, and intimates possible conflicting interests in light of evidence that the CEO of McKesson (KPH's assignor) told investors in 2017 that McKesson structures its relationships with manufacturers so that it is "paid through price inflation," suggesting that when the price of a drug increases, McKesson makes more money. If true, Mylan argues, KPH's claims are directly contrary to the stated interests of KPH's assignor and one of the biggest absent members of the class.[30]

Plaintiffs dispute the applicability of both *Urethane I* and *Valley Drug*. With respect to the former, Plaintiffs seek to distinguish it as a case involving "a conspiracy to fix prices on a

---

[27] 350 F.3d at 1193.
[28] *Id.*
[29] *Id.* at 1194.
[30] ECF No. 225 at 9-10.

mere component of a larger product."³¹ The alleged conflict between the named plaintiffs and the putative class members was one plaintiff's status as a distributor of polyether polyol products, which "may set it apart from many of the other putative class members who purchased such products for their own manufacturing purpose."³² But Judge Waxse's mention of the party's status was in his analysis of whether the requested discovery was relevant to class certification, and not in his discussion of whether discovery of downstream data is forbidden in antitrust actions. Because the difference in status "heighten[ed] the necessity" for defendants to determine the typicality of plaintiffs' claims, their adequacy as representatives, and whether common questions were likely to predominate, Judge Waxse concluded the discovery requests at issue were relevant to certification.³³

Plaintiffs criticize *Valley Drug* as an outlier but as Mylan points out, only one court of appeals has rejected *Valley Drug* and the Tenth Circuit has not opined on the issue.³⁴ Moreover, the Court is more persuaded by and believes it appropriate to be consistent with the law in this district. Not only did Judge Waxse rule on the issue in *Urethane I*, but subsequent rulings in the case by Magistrate Judge O'Hara and District Judge Lungstrum confirm that "it can no longer be said there exists a practice of proscribing discovery of downstream data. Multiple courts have recognized that if downstream data is relevant to a permissible claim or defense asserted in the case, it may be discovered."³⁵ Accordingly, the Court overrules Plaintiffs' Downstream Objection.

---

³¹ ECF No. 235 at 4.
³² *Id.* (quoting *Urethane I*, 237 FRD at 461).
³³ *Id.*
³⁴ *See In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012).
³⁵ *In re Urethane Antitrust Litig.*, 04-MD-1616-JWL, 2010 WL 10876331, at *5 (D. Kan. Jan. 20, 2010) (*Urethane II*) (Magistrate Judge O'Hara). *See also In re Urethane Antitrust Litig.,* 04-

The Court likewise overrules Plaintiffs' objection that the downstream discovery Mylan seeks is unduly burdensome. Plaintiffs have not met their burden to justify their objection by demonstrating that the time or expense involved in responding to the requested discovery is unduly burdensome. They have offered no such facts. Nor have Plaintiffs offered facts to support a finding that their asserted burden or expense is unreasonable in light of the benefits to be secured from the discovery. A mere assertion that responding to discovery would be burdensome is insufficient.

The Court overrules Plaintiffs' Downstream Discovery Objection to RFP Nos. 26, 27, 36, 38, 40, 42, 44-51, and 73. In addition, the Court overrules Plaintiff FWK's objection to Interrogatory No. 17 for the same reasons.

**B.     RFP No. 54 to all Plaintiffs**

This request seeks all documents relating to any communications Plaintiffs have had with the parties, counsel, or retained experts in the MDL or in the Minnesota case. Mylan argues Plaintiffs have made no showing by which it or the Court can assess Plaintiffs' privilege objection and it should be overruled. Plaintiffs agree to prepare a privilege log for all documents they previously withheld that are responsive to Mylan's discovery requests, which would include this request. But Plaintiffs maintain Mylan has not addressed their work-product objection and the Court should reject Mylan's argument that Plaintiffs waived the objection.

---

1616-JWL, 2011 WL 1327988, at *7 (D. Kan. Apr. 5, 2011) ("Finally, the Court agrees with the Magistrate Judge that the downstream discovery requested in this case is relevant to plaintiff's fraudulent concealment claim, by which they seek to extend the statute of limitations. Any evidence that plaintiffs carefully monitored defendants' costs and prices, for instance for the purpose of using defendants' increases as a pretext for implementing their own increases, would be relevant to the issue of whether plaintiffs knew or reasonably should have known that defendants' stated reasons for price increases were pretextual.") (District Judge Lungsrum).

The Court finds Plaintiffs have not waived the work-product objection raised in their initial response to this request. But as Mylan appropriately notes, Plaintiffs must include in their privilege log all appropriate information for documents they claim are protected by the work-product doctrine.

### C.     RFP No. 74 to FWK

This request seeks all transcripts of deposition testimony by FWK relating to the putative class-action it filed in *In re Intuniv Antitrust Litigation*, No. 1:16-CV-12653 (D. Mass.). Plaintiff FWK objected that the request "seeks information protected from disclosure by agreements between FWK and third parties, which may not allow the production of and/or require the consent of third parties and/or have confidentiality requirements."[36] But during the meet-and-confer process, Plaintiffs responded in writing to a request by Mylan to "clarify their privilege *and other objections and responses* to certain of Mylan's RFPs,"[37] including this one. The response to RFP No. 74 states as follows: "Plaintiffs are not standing on their privilege objection and will log responsive document[s] to the extent they exist but do stand on their confidentiality objection and will not produce documents based on this objection."[38] The Court agrees that FWK abandoned its objection based on relevance. But even if not abandoned, the Court would overrule the objection because the *Intuniv* court found FWK to be an inadequate class representative, citing FWK's deposition testimony. Accordingly, the requested deposition testimony is relevant to Mylan's assessment of whether FWK is an adequate class representative. The Court overrules FWK's objections to RFP No. 74.

---

[36] ECF No. 225-13 at 57.
[37] ECF No. 225-11 at 1 (emphasis added).
[38] *Id.* at 3.

### D. Interrogatory No. 1 to FWK

This interrogatory directs Plaintiffs to identify all persons with knowledge of the events, facts, or circumstances alleged in the Complaint. Plaintiff FWK refused to identify anyone with relevant knowledge who was previously employed by its assignor, Kerr. But in the meet-and-confer process, Plaintiffs agreed they will identify Ralph Young, Kerr's pharmaceutical buyer, as an individual with relevant knowledge. Mylan complains the response is insufficient, as it does not state that Ralph Young is the only Kerr employee with relevant knowledge. The Court agrees Plaintiffs' representation is ambiguous. Even though FWK abandoned its original response, in its supplemental responses to Interrogatory No. 1 it shall identify all individuals with knowledge of the events, fact, or circumstances alleged in the Complaint.

### E. Interrogatory Nos. 10 and 11 to all Plaintiffs

These interrogatories address the date on which all Plaintiffs' alleged damages began. In No. 10, Mylan is seeking facts that would support a class period beginning on November 1, 2013, the date alleged in Plaintiffs' Complaint. And in No. 11, Mylan asks Plaintiffs to identify the date on which they contend Teva would have launched its generic epinephrine auto-injector but for Defendants' allegedly unlawful conduct.

Plaintiffs supplemented their response to Interrogatory No. 10 by stating "the alleged class suffered damages at least as early, if not earlier, than November 1, 2013."[39] But as Mylan points out, Plaintiffs include no facts in this answer. Plaintiffs acknowledge the brevity of their supplemental answer and argue it is appropriate because they would otherwise prematurely divulge expert analysis and provide an incomplete response while discovery is ongoing. The

---

[39] ECF No. 225-7 at 23-24.

Court agrees that Plaintiffs may defer further supplementation of their answer to Interrogatory No. 10, but reminds Plaintiffs of their duty to supplement as they learn more responsive information.

With respect to Interrogatory No. 11, the Court agrees the answer to when Teva would have launched its generic EpiPen in the but-for-world is in the province of Plaintiffs' expert testimony. Plaintiffs shall answer this interrogatory at the completion of discovery.

### F. Interrogatory Nos. 15 and 16 to KPH

These interrogatories request information and documents relating to the assignment of claims from McKesson to KPH. Plaintiffs have agreed to provide any non-privileged information, to the extent there is any, responsive to these interrogatories, and to log privileged documents. Mylan posits Plaintiffs may not provide complete answers. The Court has no reason to believe Plaintiffs will not fully respond, and will not speculate about what information is available and within Plaintiffs' knowledge and control.

### G. Interrogatory No. 15 to Castillo

This interrogatory asks Plaintiff Castillo to describe its bases for voluntarily dismissing the claims it filed against Mylan in 2017. Mylan contends Castillo has failed to fully answer the interrogatory, and its answer was not under oath. Plaintiffs objected on the grounds the information sought is irrelevant, unduly burdensome, and not proportionate to the needs of this case. In addition, Plaintiffs objected on the basis of the "applicable privilege, including but not limited to, the common interest privilege, the joint prosecution privilege, the attorney-client privilege, and/or the work product doctrine. The investigation and decision to voluntarily dismiss

the claims in the above-mentioned lawsuit was made in consultation with legal counsel and is therefore protected from disclosure."[40]

The Court finds the interrogatory seeks information relevant to Mylan's statute of limitations defense insofar as it reflects Castillo was not diligent in pursuing its claims. And Plaintiffs have provided no basis for objections of undue burden or lack of proportionality. Plaintiffs have agreed to supplement Castillo's answer to this interrogatory to include additional information. To the extent the interrogatory seeks protected work-product information, however, the Court will not compel Castillo to produce documents but expects Plaintiffs to properly enter the identifying information on its privilege log.

### H. Withdrawn Objections

Plaintiffs have withdrawn their objections to several discovery requests included in Mylan's motion, thereby obviating the need for a ruling. In addition, Plaintiffs have agreed to prepare a privilege log for documents they claim are subject to protection. This includes the following:

- RFP Nos. 69, 70, and 75-77 to FWK (withdrawing objection to relevance)
- RFP Nos. 58-59 to KPH (withdrawing confidentiality objection and will prepare privilege log)
- RFP Nos. 63-64 to KPH (will prepare privilege log)
- RFP Nos. 60-61 to KPH (will prepare privilege log)

**IT IS THEREFORE ORDERED** that Mylan Defendants' Motion to Compel Discovery From Plaintiffs (ECF No. 224) is granted in part and denied in part as set forth above. Plaintiffs

---

[40] ECF No. 225-7 at 33.

shall produce responsive documents and a complete privilege log within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

Dated this 28th day of November, 2022 in Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge