## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KPH HEALTHCARE SERVICES,
INC., a/k/a KINNEY DRUGS INC.,
FWK HOLDINGS, LLC, and
CÉSAR CASTILLO, LLC,
individually and on behalf of all those
similarly situated,

          **Plaintiffs,**

v.

MYLAN N.V., et al.,

          **Defendants.**

      **Case No. 20-2065-DDC-TJJ**

## MEMORANDUM AND ORDER

On August 23, 2022, Magistrate Judge Teresa J. James issued a Memorandum and Order

that, among other things, granted a portion of a Motion to Compel filed by plaintiffs against the

Mylan Defendants[1] ("Mylan").  Doc. 252 at 13–16.  Specifically, Judge James's Order

compelled Mylan to produce about 115 documents created before July 2013, and shared between

Mylan and Pfizer.  *Id.*; *see also* Doc. 270 at 11.  The documents appear on Mylan's privilege log

in a multi-district litigation proceeding—*In re EpiPen (Epinephrine Injection USP) Marketing,*

*Sales Practices & Antitrust Litigation*, No. 17-MD-2785-DDC-TJJ (D. Kan.).  Judge James

ordered Mylan to produce the documents after concluding that:  (1) Mylan had waived the

---

[1]     The Mylan Defendants refer to defendants Mylan N.V., Mylan Pharmaceuticals, Inc., and Mylan Specialty, L.P.  This Order refers to the Mylan Defendants collectively as "Mylan."

     Plaintiffs also sued a collection of Pfizer Defendants in this lawsuit.  They include Pfizer, Inc., King Pharmaceuticals, Inc., and Meridian Medical Technologies, Inc.  On August 8, 2022, the court entered a Memorandum and Order granting the Pfizer Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint.  Doc. 134.  Thus, based on the case's current posture, the Pfizer Defendants no longer are parties to this lawsuit.  The remainder of this Order refers to the Pfizer Defendants collectively as Pfizer.

attorney-client privilege by sharing the documents with Pfizer; and (2) Mylan hadn't shown that the common interest doctrine protected the documents from disclosure.  Doc. 252 at 13–16.

Mylan has filed "Objections to and a Motion to Review Magistrate Judge's Order of August 23, 2022."  Doc. 270.  Mylan's filing asks the court to review just the portion of Judge James's Order that compels Mylan to produce the documents shared between Mylan and Pfizer. *Id.* at 6.  Also, Pfizer has filed a "Notice of Joinder in Mylan's Objections to and a Motion to Review Magistrate Judge's Order of August 23, 2022."  Doc. 289.  Although Pfizer no longer is a party to the case, it asserts that it qualifies as an interested party to this dispute because it had a reasonable expectation that the attorney-client privilege protected the documents shared between Pfizer and Mylan.  *Id.* at 1.  As a consequence, Pfizer contends, the documents aren't subject to disclosure.[2]

---

[2]     Plaintiffs ask the court to strike Pfizer's Notice of Joinder as untimely under Fed. R. Civ. P. 72(a). Doc. 292 at 12.  Fed. R. Civ. P. 72(a) provides that a "party may serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy."  Here, Pfizer filed its Notice of Joinder on September 23, 2002—more than 14 days after Judge James issued her Memorandum and Order on August 23, 2022.  But, Pfizer contends, Rule 72(a) doesn't apply to its Notice of Joinder because it isn't a "party" to the lawsuit who can file objections under Rule 72(a).  Indeed, Judge James issued her Order after the court had dismissed Pfizer from the lawsuit.  Doc. 252 at 1 n.1.  As a consequence, Judge James concluded that plaintiffs' requests for relief against Pfizer were moot.  *Id.*

As Pfizer explains, its Notice of Joinder isn't an Objection under Rule 72(a) by a "party" to the lawsuit.  Instead, it's a Notice of Joinder by an "interested party" to this discovery dispute "'because the common interest documents at issue in the [Order] consist of privileged communications shared between the Mylan Defendants and Pfizer.'"  Doc. 299 at 2 (quoting Doc. 289 at 1).  Pfizer also asserts that the court should consider its filing because Pfizer filed it before plaintiffs' Opposition was due.  Thus, Pfizer contends, plaintiffs sustained no prejudice from the Notice of Joinder because they had an opportunity to respond to Pfizer's arguments.  And indeed, plaintiffs' Opposition responds to Pfizer's Notice of Joinder, arguing that the court should reject Pfizer's arguments both on procedural grounds and on their merits. *See generally* Doc. 292.  Also, the court observes that Pfizer's Joinder merely expands arguments that Mylan timely asserts in its Objection.  And none of its arguments change the outcome of the court's decision here which affirms Judge James's Order.  Based on these facts, the court declines to strike Pfizer's Notice of Joinder as an untimely objection.

Plaintiffs have filed an Opposition to Mylan's Objections and a Response to Pfizer's Notice of Joinder (Doc. 292).  Mylan has submitted a Reply (Doc. 297).  And Pfizer has filed a "Response to Plaintiffs' Opposition."  Doc. 299.

The court has reviewed the parties' submissions and considered their arguments directed at Judge James's August 23, 2022 Memorandum and Order.  For reasons explained below, the court denies Mylan's Objections to and Motion to Review Judge James's August 23, 2022 Order.

## I.      Factual and Procedural Background

This lawsuit alleges Sherman Antitrust Act claims against entities who manufacture and sell EpiPens.  Doc. 128 at 65–69 (Consolidated Fourth Am. Class Action Compl. ("Compl.")) ¶¶ 239–56).  EpiPens are disposable, prefilled, FDA-approved epinephrine auto injectors ("EAI") that deliver epinephrine to treat severe allergic reactions known as anaphylaxis.  *Id.* at 4 (Compl. ¶¶ 2–3).  Plaintiffs are purchasers (or assignees of a purchaser) of EpiPens.  *Id.* at 7–10 (Compl. ¶¶ 14–21).  Mylan markets, sells, and distributes EpiPens in the United States.  *Id.* at 4–5, 31 (Compl. ¶¶ 4, 96).  Pfizer manufactures EpiPens, holds EpiPen patents, and supplies EpiPens to Mylan.  *Id.* at 4–5 (Compl. ¶¶ 4–5).

Plaintiffs allege that Mylan and Pfizer entered a "Supply Agreement" in 2010 that "established a Joint Commercial Committee designed to streamline distribution of EpiPen products."  *Id.* at 5 (Compl. ¶ 5).  The Supply Agreement required Pfizer to supply Mylan with the quantities of EpiPens that Mylan requested, and Mylan in turn compensated Pfizer based on the number of EpiPens provided.  *Id.*  Also, the Supply Agreement required Mylan and Pfizer to "notify each other of potential infringement and jointly determine in good faith the appropriate course of action[.]"  *Id.* at 40–41 (Compl. ¶ 132) (internal quotation marks omitted).

Plaintiffs also assert that Mylan and Pfizer entered a "Common Interest Agreement in connection with patent litigation" against Teva Pharmaceuticals USA, Inc. ("Teva") about certain EpiPen patents. *Id.* at 36–37 (Compl. ¶¶ 117–18). During the times relevant to this lawsuit, Pfizer owned four patents covering EpiPen devices. *Id.* at 56–57 (Compl. ¶ 199). These patents are set to expire in November 2025. *Id.* In July 2013, Pfizer assigned the New Drug Application ("NDA") for EpiPen-related patents to Mylan. *Id.* at 4–5 (Compl. ¶ 4).

This lawsuit alleges that Mylan and Pfizer, through their manufacture and sale of the EpiPen, engaged in an "anticompetitive and unlawful conspiracy" and entered "agreements in restraint of trade to substantially delay the onset of generic competition for the EpiPen[.]" *Id.* at 4 (Compl. ¶ 2). Specifically, plaintiffs allege, "on April 26, 2012, [d]efendants entered into a series of unlawful and anticompetitive agreements with generic drug manufacturer, Teva" and those agreements "agreed to delay entry of Teva's AB-rated generic EpiPen until June 22, 2015 (subject to FDA approval) and settle patent litigation related to Teva's ANDA [Abbreviated New Drug Application] to manufacture and market an AB-rated generic EpiPen[.]" *Id.* at 5 (Compl. ¶ 6). In exchange for Teva's agreement to delay entry of a generic EpiPen in the market, "Teva and Mylan agreed to delay entry of Mylan's generic version of Nuvigil [a prescription drug sold by Teva] until June 1, 2016, and to settle patent litigation related to Mylan's ANDA to market a generic version of Nuvigil." *Id.*

According to plaintiffs, had Mylan and Pfizer not entered these agreements with Teva, a generic EpiPen would have entered the EAI market in March 2014. *Id.* at 5–6 (Compl. ¶ 7). And, after entry of a generic EpiPen, plaintiffs "and other direct purchasers of EpiPens would have been able to pay significantly lower prices than they were forced to pay because of [d]efendants' unlawful and anticompetitive conduct to delay generic entry." *Id.* Plaintiffs'

lawsuit seeks to recover "overcharge damages" that plaintiffs and putative class members purportedly paid for EpiPens and that defendants allegedly caused with their "unlawful, anticompetitive, and exclusionary conduct[.]"  *Id.* at 6 (Compl. ¶ 9); *see also id.* at 7–10 (Compl. ¶¶ 15, 20, 21) (alleging that direct purchasers "paid supra-competitive prices for [their] EpiPen purchases" because of "[d]efendants' alleged anticompetitive conduct").

### *MDL Proceedings Brought by EpiPen Consumers*

In August 2017, the Judicial Panel on Multi-District Litigation transferred to the District of Kansas for "coordinated and consolidated proceedings" a number of lawsuits brought by individual consumers and third-party payors of the EpiPen against Mylan and Pfizer based on their sale and marketing of the EpiPen.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1361 (J.P.M.L. 2017).  The parties eventually resolved the MDL proceedings in July 2022.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2022 WL 2663873, at *1 (D. Kan. July 11, 2022) (granting final approval of class action settlement).

### *Plaintiff KPH Files This Direct Purchaser Lawsuit*

In February 2020, plaintiff KPH Healthcare Services, Inc. filed this lawsuit on behalf of itself and a class of direct purchasers of the EpiPen.  *See generally* Doc. 1.  The case currently is in the discovery phase.  As part of discovery, Mylan produced to plaintiffs documents that Mylan and Pfizer had produced in the *In re EpiPen* MDL.  The documents that Mylan produced included its privilege log from the MDL.  Plaintiffs challenged certain entries on Mylan's MDL privilege log, arguing that Mylan couldn't protect the documents from disclosure by asserting the attorney-client privilege because Mylan had shared them with a third party—Pfizer.  Mylan disagreed, asserting that the documents are protected by the common interest doctrine because

Mylan and Pfizer have substantially identical legal interests in protecting the validity and enforceability of the EpiPen patents.

After the parties failed to resolve their discovery dispute by meet and confer efforts, plaintiffs filed a Motion to Compel Defendants' Responses to Plaintiffs' First Request for Production of Documents. Doc. 175. Among other requests, the Motion to Compel asked Judge James to compel Mylan to produce documents created before July 2013 and shared between Mylan and Pfizer. *Id.* at 2. Judge James granted that portion of the Motion to Compel. Doc. 252 at 13–16. And so, she ordered Mylan to produce pre-July 2013 documents shared between Pfizer and Mylan and appearing on Mylan's privilege log. *Id.* at 17.

 Mylan objects to this portion of Judge James's Memorandum and Order. The court evaluates Mylan's Objection, below. It first recites the legal standard governing Mylan's Objection to an Order issued by a magistrate judge.

## II.    Legal Standard

Federal Rule of Civil Procedure 72(a) permits a party to present specific written objections to a magistrate judge's order. When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).

This clearly erroneous standard doesn't permit de novo review of factual findings; instead, the district court must affirm a magistrate judge's order unless a full review of the evidence leaves it "'with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp.*, 847 F.2d at 1464 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Because a magistrate is afforded broad discretion in the resolution of

nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if this discretion is clearly abused." *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

In contrast, "the contrary to law" standard permits the district court to conduct an independent review of a magistrate judge's purely legal determinations. *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations and internal quotation marks omitted). A magistrate judge's order is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citing *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

### III.   Analysis

Mylan makes two principal arguments supporting its Objections to Judge James's Memorandum and Order. *First*, Mylan argues that Judge James's decision was contrary to law because she applied the wrong legal standard governing the common interest doctrine. *Second*, Mylan contends, Judge James's decision was clearly erroneous because she concluded that Mylan and Pfizer didn't share a community of interests sufficient to avoid waiving the attorney-client privilege. The court doesn't find either argument persuasive. It explains why in the subsections A and B, following below.

### A.   Judge James's Decision to Apply the "Identical, Not Similar" Standard  for Determining Whether the Parties Share a Common Interest Wasn't Contrary to Law.

Mylan argues that Judge James applied the wrong legal standard governing the common interest doctrine when she issued her Order compelling Mylan to produce the documents listed on its MDL privilege log. The court disagrees.

Judge James's Order correctly explained that our court and courts "'elsewhere treat the common-interest doctrine "not as a separate privilege, but as an exception to waiver of the attorney-client privilege" which "acts as an exception to the general waiver rule by facilitating cooperative efforts among parties who share common interests."'"  Doc. 252 at 13 (quoting *Greenfield v. Newman Univ., Inc.*, No. 2:18-cv-02655-DDC-TJJ, 2020 WL 6559424, at *3 (D. Kan. Nov. 9, 2020) (quoting *Sawyer v. Sw. Airlines*, Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002))).  The Order explained that "'[t]o fit within the protection" of the common interest doctrine, the parties must have made the communications "'in the course of a joint effort with respect to a common legal interest and for the purpose of furthering that effort.'"  *Id.* at 13–14 (quoting *Greenfield*, 2020 WL 6559424, at *3 (quoting *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007)).

Judge James then quoted language from a Tenth Circuit case defining the relationship required for the common interest doctrine to apply.  *Id.* at 14 (quoting *Frontier Refin., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 705 (10th Cir. 1998)).  In *Frontier Refining*, the Circuit recited:  "'A community of interest exists where different persons or entities "have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . . The key consideration is that the nature of the interest be identical, not similar."'"  *Frontier Refin.*, 136 F.3d at 705 (quoting *NL Indus., Inc. v. Com. Union Ins. Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974))).  Judge James also cited a case from our court applying that same legal standard when deciding whether the common interest doctrine protected communications from disclosure.  Doc. 252 at 14 n.28 (citing *Lawson v. Spirit Aerosystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019)).  In *Lawson*, as our court explained, "[c]ourts have

generally required that the nature of the parties' common interest 'be identical, not similar, and be legal, not solely commercial.'" *Lawson*, 410 F. Supp. 3d at 12209 (quoting *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007)).

Judge James's Order next recognized that Mylan had argued for the court to apply a different legal standard. Doc. 252 at 14. She explained, "Mylan argues the proper standard is not whether it shared an 'identical' legal interest with Pfizer, but whether they shared 'substantially identical' legal interests." *Id.* To support its argument, Mylan relied on another case from our court: *High Point SARL v. Sprint Nextel Corporation*, No. 09-2269-CM-DJW, 2012 WL 234024 (D. Kan. Jan. 25, 2012). Doc. 252 at 14.

Judge James correctly summarized *High Point*'s background and holding. She explained that in *High Point*, "Magistrate Judge Waxse was persuaded that the nature of the action—a patent case—warranted a departure from previous rulings requiring legal interests to be identical, and he applied the less strict 'substantially identical legal interest' standard when deciding the common interest exception." Doc. 252 at 14. Judge James noted that *High Point* "considered whether Federal Circuit or Tenth Circuit law applie[d] to determine waiver" in that patent action. *Id.* And "Judge Waxse recognized that courts generally look to Federal Circuit law when deciding issues unique to patent law, but on non-patent issues a court applies the law of the circuit in which the district court sits." *Id.* (citing *High Point*, 2012 WL 234024, at *6). Judge Waxse determined that Tenth Circuit law applied in *High Point* because "'[t]he issue of waiver itself and the scope of that waiver as it applies to other documents [did] not fall exclusively in the realm of patent law[.]'" *Id.* at 14–15 (quoting *High Point*, 2012 WL 234024, at *6).

As Judge James recognized, Judge Waxse's analysis began by citing "one of his own cases that reflects the state of Tenth Circuit law that the 'key consideration' is whether the nature

of the interest is identical, not similar, and legal, not solely commercial[.]" *Id.* at 15 (quoting *Sawyer*, 2002 WL 31928442, at *3); *see also High Point*, 2012 WL 234024, at *7 ("In *Sawyer v. Southwest Airlines*, this Court held that 'for the common interest doctrine to attach, most courts . . . insist that the two parties have in common an interest in securing legal advice related to the same matter and that the communications be made to advance their shared interest in securing legal advice on that common matter.  The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'" (quoting *Sawyer*, 2002 WL 31928442, at *3)).

But then, Judge Waxse continued, discussing "patent cases from other circuits" and eventually concluding "the briefing and affidavits submitted by the non-party entity asserting the privilege had 'sufficiently shown that it had a substantially identical common legal interest in the validity, enforceability, and potential for infringement of the patents-in-suit at the time it disclosed the communications to . . . prospective patent purchasers.'"  Doc. 252 at 15 (quoting *High Point*, 2012 WL 234024, at *9).

More specifically, *High Point* recognized that our court "previously [had] required a party invoking the common interest exception to privilege waiver to show that the nature of the legal interest [was] identical," but Judge Waxse found those cases differed from *High Point* because they "were not patent cases."  *High Point*, 2012 WL 234024, at *9.  Thus, Judge Waxse decided "not [to] require [the party invoking the common interest doctrine] to show an identical common legal interest to avail itself of the common interest exception to privilege waiver in" *High Point*.  *Id.*  Instead, Judge Waxse required the party invoking the doctrine "to show a substantially identical legal interest in the subject of the communication with the entity receiving

the privileged material, as used in" a Federal Circuit decision.  *Id.* (citing *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996)).

After accurately summarizing *High Point*'s holding, Judge James declined to apply Judge Waxse's "substantially identical legal interest" standard, as Mylan argued she should.  Instead, Judge James explained that the court "feels bound by Tenth Circuit law, as set forth in *Frontier Refining*, to apply the 'identical' legal interest standard in analyzing whether a shared common interest excuses waiver of a privilege."  Doc. 252 at 15.  Also, she observed that the "Federal Circuit confirms this approach, as it also applies the perceived law of the regional circuit in deciding procedural matters not unique to patent issues, including the scope of the attorney-client privilege."  *Id.* (citing *In re Regents of Univ. of Cal.*, 101 F.3d at 1390).

Mylan argues that Judge James's decision to apply the "identical" legal interest standard was contrary to law.  Mylan asserts three arguments supporting its objection on this basis.[3]  None of them establish that Judge James's decision was contrary to law.

*First*, Mylan argues that *Frontier Refining*'s "identical, not similar" language isn't binding on this court.  Instead, Mylan argues, that language is dicta that the court isn't required

---

[3]     Plaintiffs' Opposition to Mylan's Objections asserts that Mylan and Pfizer waived many of their arguments because neither Mylan nor Pfizer asserted the arguments in the underlying discovery dispute before Judge James.  Our Circuit has held that "'[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.'"  *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)).  But here, plaintiffs, when asserting that Mylan and Pfizer have waived certain issues for review, construe their arguments too narrowly.  Mylan and Pfizer's Oppositions to plaintiffs' Motion to Compel argued to Judge James that (1) a "substantially similar legal interest is enough" to apply the common interest doctrine, and (2) "Mylan and Pfizer have at all relevant times shared an identical interest—or at the very least a substantially identical interest—in EpiPen products, including but not limited to an identical legal interest in protecting the intellectual property relating to EpiPen devices."  Doc. 182 at 26 (Mylan Opp'n) (citations and internal quotation marks omitted); *see also* Doc. 181 at 5, 12–16 (Pfizer Opp'n).  Mylan's Objections expand on these arguments and cite additional authority to support them.  That's permissible under our Circuit's standards governing appellate review.  *See Baca v. Dep't of Army*, 983 F.3d 1131, 1140 (10th Cir. 2020) (explaining that an appeal can't raise "a new theory of relief" but may provide "new legal authority in support of" a claim advanced below).  Mylan thus properly preserved for review the issues that it asserts in its Objection.

to follow.  *Frontier Refining* was an indemnity action brought by an oil refinery against the manufacturer of centrifugal pumps arising from a fire in a refinery that damaged one of the manufacturer's cast iron pumps.  136 F.3d at 697.  After the oil refinery settled personal injury claims for victims burned in the fire, the oil refinery sought indemnification from the pump manufacturer.  *Id.* at 698.  The pump manufacturer moved to compel the oil refinery to produce documents connected to the underlying personal injury claims.  *Id.*  And it invoked "a novel twist" on the common interest doctrine by using the doctrine "as a sword to overcome the work product doctrine" designations by the oil refinery.  *Id.* at 705.  The Tenth Circuit held that the common interest doctrine didn't apply because though the oil refinery and pump manufacturer "may have shared an interest in minimizing the amount of the settlement in the underlying lawsuits, they did not at any time share an interest in identifying the cause of the fire or [the oil refinery's] response to the accident."  *Id.*

To support its conclusion that the common interest didn't apply to *Frontier Refining*'s facts, our Circuit cited *NL Industries, Inc. v. Commercial Union Insurance Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992).  *Frontier Refin.*, 136 F.3d at 705.  And specifically, our Circuit quoted the following language from *NL Industries* in a parenthetical citation:  "'A community of interest exists where different persons or entities "have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar."'"  *Frontier Refin.*, 136 F.3d at 705 (quoting *NL Indus.*, 144 F.R.D. at 230–31) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974))).

Mylan argues that Judge James erred by applying the "identical, not similar" language because it comes from a parenthetical citation.  Mylan contends that *Fronter Refining* never

defined the proper scope of the common interest doctrine because the Circuit didn't have to

decide under that case's facts whether to apply the "identical, not similar" legal standard or a

lesser "substantially identical" legal interest.  Instead, the Circuit concluded that *Frontier*

*Refining*'s facts showed that the two parties had no legal interest sufficient to invoke the

common interest doctrine.  As a consequence, Mylan argues, the Circuit's use of the "identical,

not similar" language is not part of its holding and thus constitutes dicta.  *See* Doc. 297 at 16

(quoting *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this Court is

bound by a holding of a prior panel of this Court but is not bound by a prior panel's *dicta*.")).

It's true.  *Frontier Refining* didn't squarely decide whether the "identical, not similar"

legal standard applies to the common interest doctrine instead of a "substantially identical" legal

interest or some other standard.  The case didn't present that issue directly.  Nevertheless, the

Circuit relied on the "identical, not similar" language from *NL Industries* to define the legal

standard governing when parties "share a community of interest" sufficient to invoke the

common interest doctrine.  *Frontier Refin.*, 136 F.3d at 705.  And, the Circuit held that the case's

facts didn't satisfy that "identical, not similar" standard.  *Id.*  Thus, the "identical, not similar"

legal standard was part of the Tenth Circuit's holding.  As a consequence, it's Circuit precedent

that binds our court.[4]

---

[4]      Mylan also argues that the Tenth Circuit didn't apply the "identical, not similar" language when
discussing the common interest doctrine in another case, *In re Qwest Communications International Inc.*,
450 F.3d 1179, 1195 (10th Cir. 2006).  But *Qwest* didn't present that issue.  It never discusses whether the
common interest doctrine requires "identical, not similar" interests or whether a lesser standard such as
the "substantially identical" test applies.  Nevertheless, Mylan asserts that *Qwest* suggests that the Circuit
would decline to apply the "identical, not similar" standard and instead favor a less rigid test because the
Circuit said the common interest doctrine serves to "advance[ ] the representation of the party and the
preparation of the case" which are public interests promoted by the attorney client privilege.  *Id.*; *see also*
Doc. 270 at 15 (asserting that "purpose of attorney-client privilege is to 'promote broader public interests
in the observance of law and administration of justice'" (quoting *In re Qwest*, 450 F.3d at 1185)).
Mylan's arguments stretch *Qwest*'s language much too far.  *Qwest* never addresses the issue here—
whether Judge James erred by applying the "identical, not similar" standard for the common interest

And, even if *Frontier Refining*'s language is dicta, Mylan hasn't shown that Judge James's decision to apply that legal standard was contrary to law. Just the opposite, *Frontier Refining* approved the "identical, not similar" language—quoting that standard as recited by two other federal district court cases. 136 F.3d at 705 (quoting *NL Indus.*, 144 F.R.D. at 230–31) (quoting *Duplan Corp.*, 397 F. Supp. at 1172)). Judge James's decision to apply this standard here—one cited approvingly by our Circuit—wasn't contrary to law.

Also, Judge James cited other cases from our court that have applied the "identical, not similar" language. Doc. 252 at 14 n.28 (citing *Lawson v. Spirit Aerosystems, Inc.*, 410 F. Supp. 3d 1195, 1209 (D. Kan. 2019)); *see also id.* at 15 n.31 (citing *Sawyer v. Sw. Airlines*, Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002)); *id.* at 15 n.34 (citing *Cessna Fin. Corp. v. Jetsuite, Inc.*, No. 18-1095-EFM-KGG, 2020 WL 1862577, at *2 (D. Kan. Apr. 14, 2020)).

And plaintiffs' Opposition cites a number of cases from our court and other district courts within our Circuit that have applied the "identical, not similar" language. Doc. 292 at 19 n.3 (collecting cases); *see also TP ST Acquisition, LLC v. Lindsey*, No. 21-2020-JAR, 2022 WL 252001, at *8 (D. Kan. Jan. 26, 2022) (recognizing that the "nature of the common interest must be identical, not similar, and be legal, not solely commercial" and concluding that communications were protected because the parties "had a common interest arising from" litigation threats (citations and internal quotation marks omitted)); *Gates Corp. v. CRP Indus., Inc.*, No. 1:16-cv-01145-KLM, 2018 WL 4697326, at *7–8 (D. Colo. Aug. 10, 2018) (explaining that the "Tenth Circuit has long held that the common-interest doctrine should be construed narrowly" and requires "the nature of the interest be identical, not similar" (quoting *Frontier*

---

doctrine instead of a "substantially identical" interest standard. Thus, the case doesn't show that her decision was contrary to law.

*Refin.*, 136 F.3d at 705)); *In re Urethane Antitrust Litig.*, MDL No. 1616, 2013 WL 4781035, at *2 (D. Kan. Sept. 5, 2013) (holding parties had "an identical (albeit general) interest" but not a "'legal interest' of the type protected by the common-interest doctrine"); *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890 TS, 2011 WL 2516935, at *3 (D. Utah June 23, 2011) (holding that Pfizer and third party didn't "share a community of interest" sufficient to invoke the common interest doctrine because the "key consideration is that the nature of the interest must be identical, not similar[,]" and the "fact that there is some overlap of a commercial interest concerning the creation of [pharmaceutical products did] not establish a legal interest").

All these federal district court cases serve as persuasive authority for applying the "identical, not similar" language here.  Thus, Judge James's decision to apply that standard wasn't contrary to law.

Mylan also can't show that Judge James's decision was contrary to law simply because she declined to follow Judge Waxse's reasoning in *High Point*.  Indeed, Mylan even recognizes that "other District of Kansas cases" are not "binding on this Court."  Doc. 270 at 17 n.6 (citing *Brandon Steven Motors, LLC v. Landmark Am. Ins. Co.*, No. 2:19-CV-02659-JAR-GEB, 2020 WL 5889434, at *3 (D. Kan. Oct. 5, 2020)); *see also Brandon Steven Motors, LLC*, 2020 WL 5889434, at *3 ("District court decisions are not binding precedent, and it is clear that there is no such thing as the law of the district." (citation and internal quotation marks omitted)).  Still, Mylan argues that Judge James should have applied *High Point* because it addressed whether the common interest privilege applied to documents shared between a patent holder and third parties who were prospective patent purchasers.  Mylan argues *High Point* is similar to the facts here which involve communications between a patent holder (Pfizer) and its exclusive licensee (Mylan).

But Judge James adequately explained why she declined to adopt Judge Waxse's conclusions from *High Point*.  Doc. 252 at 14–15.  Although Judge Waxse claimed to apply Tenth Circuit law and specifically recited the "identical, not similar" standard in the *High Point* decision, he then switched course.  *See High Point*, 2012 WL 234024, at *9.  He discussed patent cases from other circuits and decided to apply a "substantially identical common legal interest" standard.  *Id.*  As Judge James correctly observed, that standard conflicts with the "identical" legal interest standard recited by the Tenth Circuit in *Frontier Refining*.  Doc. 252 at 15.  And, as Judge James noted, it conflicts with the Federal Circuit's "approach" which "applies the perceived law of the regional circuit in deciding procedural matters not unique to patent issues, including the scope of the attorney-client privilege."  *Id.* (citing *In re Regents of Univ. of Cal.*, 101 F.3d at 1390).  Thus, Judge James's decision not to apply *High Point*'s "substantially identical common legal interest" standard to the dispute here wasn't contrary to law.

For all these reasons, the court holds that Mylan's first argument provides no reason to disturb Judge James's Order.  Just the opposite, the court concludes, Judge James properly applied the legal standard approved by the Tenth Circuit in *Frontier Refining*.  It's the same standard that our court and others have applied repeatedly in cases involving the common interest doctrine.

*Second*, Mylan argues that the weight of authority rejects the "identical, not similar" standard for the common interest doctrine.  To support its argument, Mylan relies on out-of-Circuit cases, commentators, and treatises that have applied variations of a "substantially identical" or "substantially similar" test for determining whether parties share a sufficient common interest to warrant the common interest doctrine instead of the "identical, not similar" test.  None of these authorities bind our court.  *See Rife v. Jefferson*, 742 F. App'x 377, 386 (10th

Cir. 2018) ("[T]he decisions of one circuit court of appeals are not binding upon another circuit." (citation and internal quotation marks omitted)); *Maxfield v. Henderson*, No. 4:19-cv-00106-DN, 2021 WL 3667261, at *6 (D. Utah Aug. 18, 2021) (explaining that the court was "[i]gnoring" plaintiffs' citation to "the treatise" because it was "a non-binding, secondary source"). Thus, Mylan's second argument fails to show that Judge James's application of the "identical, not similar" test articulated by *Frontier Refining* was contrary to law.

*Last*, Mylan argues that public policy disfavors the "identical, not similar" standard. Mylan contends that the "identical, not similar" standard undermines the purpose of the attorney-client privilege to encourage full and frank communications between attorneys and parties who share common interests.[5] While these policy arguments might persuade the Tenth Circuit to depart from the "identical, not similar" standard that *Frontier Refining* already has announced, the court can't find—simply as a matter of policy—that Judge James's decision was contrary to law. Just the opposite, and as already discussed, Judge James correctly applied *Frontier Refining*'s standard to the dispute in this case.

In sum, none of Mylan's arguments establish that Judge James's decision to apply the "identical" legal interest standard for the common interest doctrine was contrary to law. After applying a de novo review to this question of law, the court affirms this portion of Judge James's reasoning.

---

[5]     Pfizer's Notice of Joinder argues that the "identical, not similar" standard prevents "patent holders like Pfizer" from "be[ing] able to speak freely with their exclusive licensees about legal matters on which they are aligned by virtue of such a license." Doc. 289 at 2.

**B.  Judge James's Decision that Mylan Didn't Share Identical Legal Interests with Pfizer Wasn't Clearly Erroneous or Contrary to Law.**

Next, Mylan argues that Judge James's Order was clearly erroneous—even applying the "identical, not similar" test—because, Mylan contends, Mylan and Pfizer share a community of interests sufficient for the common interest doctrine to apply to their communications and thus protect them from disclosure.[6]

After concluding that the "identical, not similar" test applies to the discovery dispute here, Judge James explained that "the weight of authority holds that a shared desire to prevail in litigation does not amount to a common legal interest justifying application of the common-interest doctrine."  Doc. 252 at 15 (first citing *Lawson*, 410 F. Supp. 3d at 1210; then citing *Cessna Fin. Corp.*, 2020 WL 1862577, at *2).  Judge James also explained that—before July 2013, when Pfizer transferred the underlying patents to Mylan—the "operative agreements"

---

[6]    Mylan argues that this question presents a mixed question of law and fact.  Doc. 270 at 12.  Our Circuit has explained in the context of its appellate review of district court decisions that "'review of mixed questions of law and fact" are done "under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles." *United States v. Abouselman*, 976 F.3d 1146, 1153–54 (10th Cir. 2020) (citation and internal quotation marks omitted)).  "Where a mixed question primarily involves the consideration of legal principles, then a de novo review by the appellate court is appropriate." *Id.* at 1154.  Mylan argues that no factual dispute exists about Mylan and Pfizer's relationship.  So, Mylan contends, the question presented here requires the court to consider legal principles—*i.e.*, whether the parties' relationship satisfies the "identical, not similar" standard for applying the common interest doctrine.

Plaintiffs disagree.  Doc. 292 at 21.  They assert that de novo review applies only to a magistrate's "purely legal" decisions.  *Id.* (citations and internal quotation marks omitted).  And here, plaintiffs say, the question about the Mylan/Pfizer relationship isn't a purely legal one.  *Id.*  Thus, they argue, the "the clear error standard controls[.]" *Id.*

The parties don't cite any Tenth Circuit or District of Kansas cases explaining whether a different standard applies to a district court's review of a magistrate judge's decision on an issue of mixed question of law or fact.  The court's research hasn't located any governing authority either.  But, out of an abundance of caution, the court applies de novo review to the question whether Judge James erred by concluding that Mylan and Pfizer don't share a sufficient community of interests for the common interest doctrine to apply.  The court does so because it can affirm Judge James's decision under either an abuse of discretion or de novo standard of review.

between Mylan and Pfizer before "that [July 2013] transfer stated that Pfizer retained all intellectual property rights to its patents, and retained full responsibility for taking 'all actions reasonably necessary to diligently prosecute and maintain any patents or patent applications relating to the products.'" *Id.* at 16 (quoting Doc. 178-1 at 36–37). These "undisputed facts" led Judge James "to conclude that while Mylan and Pfizer had a shared desire to prevail in any potential litigation regarding the patents before July 2013, they did not have an *identical legal interest* until the transfer was effectuated." *Id.* (emphasis added). Thus, she concluded, "Mylan has not sufficiently shown it shared identical legal interests with Pfizer." *Id.* As a consequence, she held that the common interest doctrine didn't shield the documents from disclosure. *Id.* And, Judge James ordered Mylan to produce them. *Id.*

Judge James's conclusion wasn't an error. The undisputed facts establish that, before 2013, Pfizer owned the EpiPen patents. Pfizer owned the intellectual property rights in those patents, and it defended them in litigation. In 2010, Mylan and Pfizer entered a "Supply Agreement" requiring Pfizer to supply EpiPens to Mylan so that Mylan could sell them. Doc. 128 at 5 (Compl. ¶ 5). Mylan's shared interest with Pfizer thus was a commercial interest. And for the common interest doctrine to apply, "the nature of the parties' common interest" must "'be identical, not similar, and be legal, *not solely commercial*.'" *Lawson*, 410 F. Supp. 3d at 1209 (emphasis added) (first quoting *Teleglobe Commc'ns*, 493 F.3d at 365; then citing *Frontier*, 136 F.3d at 705); *see also Johnson Matthey, Inc. v. Rsch. Corp.*, No. 01CIV.8115MBMFM, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002) (refusing to apply common interest doctrine because the parties' "shared desire to maximize royalty income [was] simply a commercial concern").

Mylan provides several arguments to support the claim that its interest wasn't solely commercial but also included a legal interest.  Mylan cites the 2010 Supply Agreement that required Mylan and Pfizer to "notify each other of potential infringement and jointly determine in good faith the appropriate course of action[.]"  Doc. 128 at 40–41 (Compl. ¶ 132) (internal quotation marks omitted).  Also, it discusses the "Common Interest Agreement" that Mylan and Pfizer entered "in connection with patent litigation" against Teva Pharmaceuticals USA, Inc. ("Teva") about certain EpiPen patents.  *Id.* at 36–37 (Compl. ¶¶ 117–18).  But the parties' agreement to determine jointly a course of action in response to a potential infringement claim or in patent litigation with Teva doesn't suffice to create an identical legal interest to which the common interest doctrine applies.  As Judge James correctly explained, "a shared desire" by the parties "to prevail in litigation . . . does not amount to a common legal interest justifying application of the common interest doctrine."  *Lawson*, 410 F. Supp. 3d at 1210; *see also Cessna Fin. Corp.*, 2020 WL 1862577, at *2 (explaining that "common desire for the same outcome" in litigation isn't sufficient to establish an identical legal interest (citations and internal quotation marks omitted)).

Also, Mylan asserts that Judge James erred by focusing only on the parties' interests in the underlying patent litigation.  Mylan argues that a majority of the communications listed on the MDL privilege log involve other shared legal interests of Mylan and Pfizer, including patient education, submissions to the U.S. Food and Drug Administration, and statements made in promotional materials.  But the facts here don't establish a shared *identical legal* interest in each of these types of communications sufficient to invoke the common interest privilege.

For the FDA communications, the parties' 2010 Supply Agreement granted Pfizer "*sole authority* and responsibility for facilitating communications with the FDA" and required Pfizer

to "provide [Mylan] the opportunity to participate in such communications."  Doc. 176-2 at 8 (Supply Agreement ¶ 1.c.) (emphasis added).  Thus, Pfizer—as the patent holder—retained sole authority for facilitating FDA communications while permitting its licensee only to participate in those discussions.  Pfizer's "sole authority" over those communications doesn't show that the parties shared an identical legal interest in the FDA communications.  Instead, it suggests that Pfizer had differing interests such that it retained "sole authority" over the communications.

For patient education and promotional materials, the 2010 Supply Agreement made Mylan "responsible for the development of all promotional materials including but not limited to detailed aids, brochures, print, television, radio, or any other media advertising materials used or distributed in the U.S."  *Id.* at 10 (Supply Agreement ¶ 1.i.).  But the Agreement required that all "such U.S. promotional materials [were] subject to prior review and written approval of" Pfizer. *Id.*  And, under the Agreement, Pfizer retained "all authority and responsibility for submission of promotional labeling and advertising materials to FDA/DDMAC[.]"  *Id.*  These provisions gave authority and control over promotional materials to Pfizer.  That makes sense.  Pfizer—as the patent holder—naturally would want to maintain control over promotional materials involving its patented products because of its legal interests in the patents.  Mylan didn't share those same legal interests before 2013.  Thus, the undisputed facts just don't establish an identical legal interest sufficient to support the common interest privilege.

Last, Mylan contends that plaintiffs' allegations in this lawsuit establish the parties' shared identical legal interests.  Mylan refers to plaintiffs' allegations that Mylan and Pfizer conspired to violate the antitrust laws and plaintiffs' prayer for joint and several judgments against Mylan and Pfizer.  Also, Mylan cites plaintiffs' allegations that both Mylan and Pfizer "stood to lose" if the EpiPen patents were invalidated.  Doc. 128 at 35 (Compl. ¶ 112).

Plaintiffs' allegations don't establish an identical legal interest between Mylan and Pfizer. Indeed, as plaintiffs argue, it's possible for Mylan and Pfizer to conspire together to violate the antitrust laws without sharing an identical *legal* interest in the EpiPen.  Also, viewed in their entirety, plaintiffs' conspiracy allegations allege a shared commercial interest—*i.e.*, an interest in charging supracompetitive prices for EpiPen and profiting off the EpiPen's exclusivity.  Doc. 128 at 6 (Compl. ¶¶ 8–9); *see also id.* at 49–53, 66 (Compl. ¶¶ 164–178, 243).  But that's not a shared *legal* interest to which the common interest doctrine applies.

For all these reasons, the court finds that Judge James did not err by holding that Mylan failed to show that it shared an identical legal interest with Pfizer sufficient to invoke the common interest doctrine and shield the disputed documents from disclosure.

## IV.    Conclusion

As explained, the court concludes that Judge James's decision is neither clearly erroneous nor contrary to law.  The court thus overrules Mylan's Objections to Judge James's Memorandum and Order.

**IT IS THEREFORE ORDERED BY THE COURT** that Mylan's Objections to and Motion to Review Magistrate Judge's Order of August 23, 2022 (Doc. 270) is denied and Mylan's objections to Judge James's August 23, 2022 Memorandum and Order (Doc. 252) are overruled.

**IT IS SO ORDERED.**

**Dated this 6th day of December, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**