**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| KPH HEALTHCARE SERVICES, INC., a/k/a KINNEY DRUGS INC., FWK HOLDINGS LLC, and CÉSAR CASTILLO, LLC, individually and on behalf of all those similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>MYLAN, N.V., MYLAN PHARMACEUTICALS INC., MYLAN SPECIALTY L.P., PFIZER, INC., KING PHARMACEUTICALS LLC, and MERIDIAN MEDICAL TECHNOLOGIES, INC.,<br><br><br>Defendants. | Civil Action No. 2:20-cv-02065-DDC-TJJ |

**MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT WITH PFIZER, AND RELATED RELIEF**

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 2

   A.   Nature of the Litigation and Procedural History ............................................... 2

   B.   Summary of the Settlement ................................................................................ 5

     1.   The Settlement Class ..................................................................................... 5

     2.   Benefits of the Settlement ............................................................................. 5

III.  THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT
PURPOSES ONLY ........................................................................................................ 5

   A.   Joinder of all Settlement Class Members Is Impracticable ............................... 6

   B.   The Key Issues of Law and Fact Are Common to all Settlement Class Members .......... 8

   C.   The Claims of the Class Representatives Are Typical ....................................... 9

   D.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ...... 10

   E.   Common Questions Predominate over Individual Questions ...........................11

   F.   A Class Action is Superior to Other Methods ................................................. 12

   G.   Ascertainability ............................................................................................... 13

IV.  THE SETTLEMENT IS WITHIN THE RANGE OF FAIR, REASONABLE AND
ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED ....................................... 14

   A.   Plaintiffs and Proposed Co-Lead Settlement Class Counsel Have Adequately
Represented the Class ........................................................................................ 16

   B.   The Settlement Was Reached as a Result of Arm's Length Negotiations Assisted by an
Experienced Mediator ........................................................................................ 17

   C.   The Settlement Is Excellent Considering the Costs, Risks, and Delay of Trial and
Appeal .............................................................................................................. 17

   D.   The Method for Distributing Relief Supports Preliminary Approval ............................ 19

   E.   The Terms of the Proposed Attorneys' Fee Award Support Preliminary Approval ........ 20

   F.   Class Members Are Treated Equitably ............................................................ 21

   G.   The Settlement Is Fair and Reasonable ........................................................... 21

V.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE
CLASS ARE APPROPRIATE .......................................................................................... 22

   A.   The Court Should Preliminarily Approve the Proposed Notice of Settlement ............. 22

   B.   Appointment of A.B. Data, Ltd., to Serve as the Settlement Administrator Is Proper ... 23

   C.   Appointment of Huntington Bank as Escrow Agent Is Proper ..................................... 23

    D.      Proposed Schedule of Settlement Events ...................................................................... 23

**VI.  CONCLUSION ..................................................................................................................... 24**

# TABLE OF AUTHORITIES

## Cases

*Am. Med. Ass'n v. United Healthcare Corp.*, 2009 WL 1437819 (S.D.N.Y. May 19, 2009) .................................................................................................................. 15

*Am. Sales Co. LLC v. Pfizer*, 2017 WL 3669604 (E.D. Va. July 28, 2017) ................................... 7

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 11, 13

*Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455 (2013) ........................... 11

*Anderson v. Coca-Cola Bottlers' Ass'n*, No. 21-cv-2054, 2023 WL 3159471 (D. Kan. Apr. 28, 2023) ............................................................................................... 15, 16

*Black v. Occidental Petroleum Corp.*, 69 F.4th 1161 (10th Cir. 2023) ......................................... 8

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ......................................................................... 15

*CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014) ....................................... 13

*Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059 (D. Kan. June 18, 2020) .................................................................................................................. 16, 21

*Coe v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM, 2023 WL 3664921 (D. Kan. May 24, 2023) ..................................................................................................... 7

*DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010) ............................................... 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................... 22

*Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ........................................................................................................ 19

*Hapka v. CareCentrix, Inc.*, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................... 21

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ......................................................................... 3

*In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2017 WL 4278788 (D. Conn. Sept. 19, 2017) ........................................................................................................ 6

*In re Asacol Antitrust Litig.*, No. 1:15-cv-12730, 2017 WL 4118967 (D. Mass. Sept. 14, 2017) .......................................................................................................................... 6

*In re Austrian &amp; German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...... 18

*In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 04-mc-535, ECF No. 24 (D.D.C. Jan. 9, 2006) .......................................................................................... 6

*In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100 (S.D.N.Y. 2010) ..................... 13

*In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-2237, 2011 WL 13318188 (S.D.N.Y. Aug. 16, 2011) ....................................................................................... 6

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.* ("*EpiPen*"), No. 17-md-2785, 2021 WL 5369798 (D. Kan. Nov. 17, 2021) ........................... 17

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550 (D. Kan. Mar. 10, 2020) ....................... passim

iii

*In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012) ............................................................ 10

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-052, 2011 WL 13097266 (D. Del. Nov. 16, 2011) ("*Toprol*") ............................................................. 6

*In re Molycorp., Inc. Sec. Litig.*, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................ 17

*In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671 (D. Kan. 2009) ..................................................................................................................... 6, 8, 14, 15

*In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221 (D. Kan. 2010) .............. 16

*In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652 (D. Kan. 2013) ............... 10

*In re OxyContin Antitrust Litig.*, MDL No. 1603, 2010 WL 11493630 (S.D.N.Y. Sept. 27, 2010) ........................................................................................................................... 6

*In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2014 WL 8335997 (E.D. Mich. Oct. 2, 2014) ............................................................................ 6

*In re Remeron Direct Purchaser Antitrust Litig.*, No 03-cv-0085, ECF No. 181 (D.N.J. Aug. 30, 2005) ..................................................................................................................... 6

*In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014) ..................................................................................................... 6

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ....................................................................................................... 7

*In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 5371856 (D. Kan. Sept. 26, 2016) ................................................................................................................... 14

*In re Syngenta AG MIR 162 Corn. Litig.*, No. 14-md-2591, 2018 WL 1726345 (D. Kan. Apr. 10, 2018) ..................................................................................................................... 17

*La. Wholesale Drug Co. v. Sandofi Aventis*, 2008 WL 11399716 (S.D.N.Y. Apr. 10, 2008) ................................................................................................................................ 10

*Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179 (D. Kan. 2002) .......................... 17, 21

*Mullane v. Cen. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................ 23

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) .................................................... 14

*Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. 12-cv-3824, 2014 WL 631031 (E.D. Pa. Feb. 18, 2014) ("*Doryx*") ............................................................................. 6

*North Shore Hematology and Oncology Assoc.*, No. 04-cv-00248, ECF No. 21 (D.D.C. Sept. 10, 2004) ..................................................................................................................... 6

*O'Dowd v. Anthem, Inc.*, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ....................................... 21

*Ogden v. Figgins*, 315 F.R.D. 670 (D. Kan. 2016) ..................................................................... 7

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) ...................................... 22

*Phillips Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................................ 13

*Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*, No. 07-142, 2012 WL 12910047 (D. Del. Feb. 6, 2012) ("*Miralax*") .......................................................... 6

*Sears v. Atchison Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451 (10th Cir. 1984) .......................... 14

*Trevizo v. Adams*, 455 F.3d 1155 (10th Cir. 2006) ........................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 8

**Other Authorities**

15 U.S.C. § 1 ........................................................................................ 2, 8

15 U.S.C. § 2 ........................................................................................ 3, 8

Fed. R. Civ. P. 23(a) ....................................................................... 6, 8, 9, 10

Fed. R. Civ. P. 23(b) .............................................................................. passim

Fed. R. Civ. P. 23(c) ................................................................................ 22

Fed. R. Civ. P. 23(e) .............................................................................. passim

Fed. R. Civ. P. 23(h) ................................................................................ 20

## I.        INTRODUCTION

Plaintiffs KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc ("KPH"), FWK

Holdings LLC ("FWK"), and César Castillo, LLC ("Castillo") (collectively "Plaintiffs"),

individually and on behalf of the proposed Settlement Class (as defined in the Settlement and

stated below),[1] by and through counsel, respectfully submit this memorandum of law in support

of their motion for preliminary approval of class action settlement agreement.

After years of hard-fought litigation and months of negotiations assisted by David W.

Aemmer, Chief Circuit Mediator for the United States Court of Appeals for the Tenth Circuit,

Plaintiffs and Defendants Pfizer, Inc., King Pharmaceuticals LLC, and Meridian Medical

Technologies, Inc. (collectively, "Pfizer") reached the Settlement Agreement (the "Settlement" or

"Settlement Agreement"), attached hereto as Exhibit 1, providing that Pfizer shall pay

$50,000,000 into a Settlement Fund for the benefit of the Settlement Class. As detailed herein,

the Settlement represents an excellent result for the Settlement Class—particularly considering

the risks of continued litigation—and readily satisfies the applicable preliminary approval

standard of likely to be approved as fair, reasonable, and adequate.

Plaintiffs respectfully move this Honorable Court for entry of an Order: (1) granting

preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class for

settlement purposes only; (3) approving the Notice Program, as set forth in the Declaration of

Eric Schachter, attached hereto as Exhibit 7, and the commencement of notice to the Settlement

Class as set forth in the Notice Program; (4) appointing A.B. Data, Ltd. as the Settlement

Administrator; (5) appointing Huntington Bank as the Escrow Agent; (6) appointing KPH

Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., FWK Holdings LLC, and César Castillo,

---

[1] The definitions in the Settlement are incorporated herein by reference.

LLC as Representative Plaintiffs; (7) appointing Michael L. Roberts of Roberts Law Firm US, PC and Linda P. Nussbaum of Nussbaum Law Group, P.C. as Co-Lead Settlement Class Counsel; (8) appointing Bradley T. Wilders of Stueve Siegel Hanson LLP as Liaison Counsel; (9) approving as to form and content the Long-Form Notice, Claim Form, Summary Notice, and Reminder Notice attached hereto as Exhibits 3, 4, 5, and 6, respectively; (10) approving the proposed Plan of Allocation, attached hereto as Exhibit 8; and (11) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Representative Plaintiff service awards.

## II.      BACKGROUND

### A.   Nature of the Litigation and Procedural History

On February 14, 2020, KPH filed a Class Action Complaint alleging that Mylan, N.V., Mylan Pharmaceuticals, Inc., and Mylan Specialty L.P, (collectively "Mylan") and Pfizer (together, the "Defendants") entered into an illegal market allocation agreement with Teva Pharmaceuticals USA, Inc. ("Teva") in violation of federal antitrust laws pursuant to which Teva agreed to delay entry of its generic EpiPen and settle patent litigation relating to its Abbreviated New Drug Application ("ANDA") to market its generic EpiPen and, in exchange, Mylan agreed to delay entry of its generic Nuvigil—a blockbuster drug sold by Teva—and settle patent litigation relating to its ANDA to market generic Nuvigil.

On September 21, 2021, KPH, FWK, and Castillo filed the Fourth Amended Class Action Complaint ("FAC") asserting two claims under the Sherman Antitrust Act premised on a generic delay theory: (1) an unlawful contract, combination, or conspiracy in unreasonable restraint of trade violating 15 U.S.C. § 1, and (2) an unlawful conspiracy to monopolize violating 15 U.S.C.

§ 2. Doc. 128 at 65–69 (FAC ¶¶ 239–56). Pfizer and Mylan separately moved to dismiss the FAC on October 21, 2021. ECF No. 135, 138.

On August 8, 2022, the Court granted Pfizer's Motion to Dismiss, concluding that "*Illinois Brick* barred plaintiffs' Sherman Antitrust Act claims against Pfizer because plaintiffs are indirect purchasers of EpiPen from Pfizer."  ECF No. 241-1 at 86. The Court also granted Mylan's motion to dismiss in part, dismissing Plaintiffs' claims asserted on behalf of entities who purchased EpiPens directly from Teva, as well as Plaintiffs' claims premised on the Sandoz litigation. *Id*.

On August 22, 2022, Plaintiffs filed a Motion for Certification for Interlocutory Appeal on the issue of "whether Plaintiffs' claims against Pfizer, an alleged co-conspirator to delay entry of generic competition in the EAI market, was barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), because Plaintiffs did not purchase EpiPens directly from Pfizer." ECF No. 250. On October 31, 2022, the Court granted Plaintiffs' motion, noting there were substantial grounds for difference of opinion on whether *Illinois Brick* barred plaintiffs' claims against Pfizer and that, because the Court's ruling on the issue "would revive plaintiff's claims against Pfizer," it was controlling. ECF No. 305. On November 4, 2022, the Court entered an Order appointing Michael L. Roberts of Roberts Law Firm US, PC, and Linda P. Nussbaum of Nussbaum Law Group, P.C., as Interim Co-Lead Counsel, and Bradley T. Wilders of Stueve Siegel Hanson LLP as Interim Liaison Counsel. ECF No. 306.

On November 14, 2022, Plaintiffs sought permission from the Tenth Circuit to appeal the portion of the Court's August 8, 2022 Memorandum and Order dismissing Plaintiffs' claims against Pfizer as barred by *Illinois Brick*. *KPH Healthcare Services, Inc. v. Mylan N.V.*, Case No.

23-3014 (10th Cir.), ECF No. 010110767942. On January 23, 2023, the Tenth Circuit granted Plaintiffs' Petition.

On February 27, 2023, the Court granted Defendant Mylan's Motion to Stay the Case Pending Resolution of Plaintiffs' Appeal, except for proceedings on pending third-party document subpoenas. ECF No. 360. Pursuant to the Court's Order, the stay would terminate on June 30, 2023 or five business days after the Tenth Circuit issued the mandate on appeal, whichever occurred first. *Id.* On June 27, 2023, at the request of both parties, the Court extended the stay, with the exception of any third-party document subpoena that was served on or before January 31, 2023, until October 31, 2023, or five business days after the Tenth Circuit issued its mandate on appeal. Doc. No. 368.

On September 29, 2023, the parties filed a Joint Motion for Limited Remand to the Tenth Circuit to allow this Court to consider preliminary approval of the Settlement Agreement with Pfizer. The Tenth Circuit granted the motion on October 3, 2023. Accordingly, this Court now has jurisdiction to consider approval of the Settlement Agreement with Pfizer.

During this litigation, Plaintiffs have engaged in substantial discovery involving the Defendants, Plaintiffs, and numerous third parties, including other generic epinephrine device manufacturers and the United States Food and Drug Administration. Plaintiffs also have engaged in protracted negotiations regarding search terms and custodians, brought or opposed motions to compel, and consulted with economic experts. This discovery resulted in the production of almost 1.5 million documents, including over 150 deposition transcripts and their exhibits, dozens of sets of interrogatories, and hundreds of thousands of purchase and sales data entries. In addition, Plaintiffs both have brought and have opposed petitions for interlocutory appeal to the Tenth Circuit on various issues. In short, the litigation had sufficiently progressed such that both

Plaintiffs and Pfizer understood the strengths and weaknesses of their claims and defenses when negotiating the Settlement.

### B. Summary of the Settlement

#### 1. The Settlement Class

The Settlement Class is defined in the Settlement as follows:

> All persons or entities in the United States, its territories, possessions, and the Commonwealth of Puerto Rico, who purchased EpiPen or generic EpiPen directly from Mylan or Teva, for resale, at any time during the period from March 13, 2014 until the date on which the Court enters the Preliminary Approval Order.

Settlement Agreement ("SA") ¶ 1 n.2, attached hereto as Exhibit 1. Excluded from the Settlement Class are the following: Defendants and their officers, directors, management, employees, predecessors, subsidiaries, and affiliates, and all federal governmental entities. *Id.*

#### 2. Benefits of the Settlement

The Settlement provides that Pfizer shall pay $50,000,000 into an Escrow Account (the "Settlement Fund") for the benefit of the Settlement Class. SA ¶ 7(a). All Administrative Expenses[2] and attorneys' fees, costs, expenses, and service awards as approved by the Court shall be paid from the Settlement Fund. SA ¶ 7(e). After these amounts are deducted, all amounts remaining in the Settlement Fund (plus interest) shall be disbursed to Settlement Class Members who submit a valid claim. *Id.*

### III. THE SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee

---

[2] The Settlement defines "Administrative Expenses" to mean "disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with administering the Settlement, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement." SA ¶ 7(b).

Notes to 2018 amendments. However, for purposes of deciding whether to disseminate notice, the court must find that it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

Courts have repeatedly certified settlement classes of direct purchasers alleging that a name-brand drug maker wrongfully delayed the market entry of generic competitors.[3] Here, the certification requirements of Rule 23(a), Rule 23(b)(3), and the implied ascertainability requirement are satisfied. Accordingly, preliminary certification of the Settlement Class for Settlement purposes only is appropriate.

### A.  Joinder of all Settlement Class Members Is Impracticable

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." *Id*.  "To satisfy this requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 678 (D. Kan. 2009); *see also Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Courts in this District recognize that "a good faith estimate of at least 50 members is a sufficient size to maintain a class action." *Coe*

---

[3] *See, e.g.*, *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2017 WL 4278788 (D. Conn. Sept. 19, 2017); *In re Asacol Antitrust Litig.*, No. 1:15-cv-12730, 2017 WL 4118967 (D. Mass. Sept. 14, 2017); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2014 WL 8335997 (E.D. Mich. Oct. 2, 2014); *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014); *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. 12-cv-3824, 2014 WL 631031 (E.D. Pa. Feb. 18, 2014) ("*Doryx*"); *Rochester Drug Co-Operative, Inc. v. Braintree Labs., Inc.*, No. 07-142, 2012 WL 12910047 (D. Del. Feb. 6, 2012) ("*Miralax*"); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, No. 06-052, 2011 WL 13097266 (D. Del. Nov. 16, 2011) ("*Toprol*"); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-2237, 2011 WL 13318188 (S.D.N.Y. Aug. 16, 2011); *In re OxyContin Antitrust Litig.*, MDL No. 1603, 2010 WL 11493630 (S.D.N.Y. Sept. 27, 2010); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 04-mc-535, ECF No. 24 (D.D.C. Jan. 9, 2006); *In re Remeron Direct Purchaser Antitrust Litig.*, No 03-cv-0085, ECF No. 181 (D.N.J. Aug. 30, 2005); *North Shore Hematology and Oncology Assoc.*, No. 04-cv-00248, ECF No. 21 (D.D.C. Sept. 10, 2004).

*v. Cross-Lines Ret. Ctr., Inc.*, No. 22-2047-EFM, 2023 WL 3664921, at *3–4 (D. Kan. May 24, 2023) (quoting *Ogden v. Figgins*, 315 F.R.D. 670, 673–74 (D. Kan. 2016) (finding numerosity satisfied for a class including "at least 40 people")). When analyzing numerosity, courts look beyond the number of class members, and also "examine factors like the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members." *Id.*

Transaction-level data produced by Mylan and Teva show that the Settlement Class includes 74 geographically disbursed members—rendering the numerosity requirement presumptively satisfied.[4] *See* Decl. of Russell L. Lamb Appendix B, attached hereto as Exhibit 9. Additionally, many of these entities are small wholesalers and other purchasers that likely lack the necessary resources to bring complex, costly, expert-intensive antitrust suits on an individual basis. Accordingly, joinder of all Settlement Class Members in a single proceeding is impractical, and the numerosity requirement is satisfied. *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *5 (D. Mass. Oct. 16, 2017) (Widespread "geographic dispersion" "suggests joinder is impracticable, even when putative class members are corporate entities" ); *Am. Sales Co. LLC v. Pfizer*, 2017 WL 3669604, at *10 (E.D. Va. July 28, 2017) ("[T]he majority of the proposed class members have negative value claims (i.e., the expenses, including expert fees, exceed their possible recovery).").

---

[4] It is common practice for the largest drug wholesalers to assign a portion of their claims to third parties. As a result, it is anticipated that the number of Settlement Class Members will increase as additional assignees come forward.

**B.  The Key Issues of Law and Fact Are Common to all Settlement Class Members**

Rule 23(a)(2)'s commonality requirement mandates the existence of "a common contention" that is "capable of classwide resolution," the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a)(2) does not require plaintiffs to demonstrate that class members' claims are identical.  Rather, this "inquiry requires the Court to find only whether common questions of law or fact exist." *Motor Fuel*, 258 F.R.D. at 679.   "[E]ven a single common question" is sufficient. *Id.* at 359.

In antitrust cases, the commonality requirement is generally satisfied where the existence and impact of an unreasonable restraint on trade—such as an unlawful conspiracy to delay generic entry—will yield answers common to all class members at trial.  *See Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1189 (10th Cir. 2023) ("[T]here are two common questions that could yield common answers at trial: the existence of an antitrust violation and the existence of impact. These questions will drive the litigation and generate common answers that will determine liability in a single stroke."). In litigation brought against Defendants by indirect purchasers alleging the same pay-for-delay scheme, this Court found that "whether defendants used anticompetitive pay-for-delay settlements that delayed generic entry into the EAI market" was a question that would "generate common answers." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *14 (D. Kan. Mar. 10, 2020).  In addition, other common questions that will depend on common evidence include:

> a.  whether the conduct alleged herein constitutes a violation of the antitrust laws and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2;

b.  whether a relevant market needs to be defined in this case in light of the existence of direct evidence of Defendants' power to exclude competition and charge supra-competitive prices for EpiPen;

c.  if a relevant market needs to be defined, the definition of the relevant market for analyzing Defendants' monopoly power, and a determination of whether Defendants had monopoly power in the relevant market;

d.  whether Defendants illegally maintained their monopoly power in the relevant market;

e.  whether, and to what extent, Defendants' conduct caused antitrust injury (overcharges) to Plaintiffs and the Class; and

f.  if so, the appropriate measure of damages.

The commonality requirement is, thus, satisfied.

### C.  The Claims of the Class Representatives Are Typical

Rule 23(a)(3) requires that the representative parties' claims or defenses are typical of those of the class. For the typicality requirement to be satisfied, "the named plaintiffs' interests and claims 'need not be identical' to those of the putative class members." *In re EpiPen*, 2020 WL 1180550, at *14 (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010)). "As long as the claims of the named plaintiff and class members 'are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.'" *Id.* (quoting *Devaughn*, 594 at 1198–99). "The typicality requirement has been liberally construed by courts, and in the antitrust context, typicality will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *Id.* at *15.

Here, Plaintiffs and the Settlement Class sustained the same form of injury (the payment of overcharges) resulting from the same alleged antitrust violations of Defendants. *See In re EpiPen*, 2020 WL 1180550, at *15 (holding typicality satisfied because plaintiffs "assert every class member here relies on the same legal theory—they all paid artificially elevated prices for or

were oversold EpiPens"). *See also La. Wholesale Drug Co. v. Sanofi Aventis*, 2008 WL

11399716 (S.D.N.Y. Apr. 10, 2008). The typicality requirement is readily satisfied.

### D. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires the plaintiffs to show that "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement

asks whether the named plaintiffs and counsel (a) 'have any conflicts of interest with other class

members' and (b) will prosecute the action vigorously on behalf of the class." *In re EpiPen*, 2020

WL 1180550, at *19 (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D.

652, 671 (D. Kan. 2013)).

For the same reason Plaintiffs satisfy the typicality requirement, they also satisfy the

adequacy requirement. Plaintiffs' interests are aligned with those of the Settlement Class in that

they seek to prove Defendants engaged in conduct in violation of federal antitrust laws and that

the prices they paid for EpiPen, authorized generic EpiPen, and Teva's AB-rated EpiPen were

artificially inflated due to such misconduct. *See, e.g., In re K-Dur Antitrust Litig.*, 686 F.3d 197,

223 (3d Cir. 2012), *judgment vacated on other grounds*, 570 U.S. 913 (2013) ("[A]ll of the class

members have the same financial incentive for purposes of this litigation—i.e., proving that they

were overcharged and recovering damages based on that overcharge."). Plaintiffs have no

interests that conflict with those of absent Settlement Class Members, and there are no

anticipated intra-class conflicts.

Furthermore, the Settlement Class is well represented. Proposed Co-Lead Settlement

Class Counsel, Michael L. Roberts and Linda P. Nussbaum, were previously appointed Interim

Co-Lead Counsel and have extensive experience litigating reverse payment generic delay cases.

Prior to reaching the Settlement, Proposed Co-Lead Settlement Class Counsel conducted an

extensive investigation into the claims asserted and engaged in protracted discovery, including the review of approximately 1.5 million documents and dozens of deposition transcripts and their exhibits, serving extensive written discovery and dozens of third-party subpoenas, filing and opposing motions to compel, and consulting with economic experts. They also filed multiple class action complaints, briefed motions to dismiss filed by the Defendants, successfully moved this Court for interlocutory review of the Court's order dismissing Plaintiffs' claims against Pfizer, and successfully petitioned the Tenth Circuit for interlocutory review of that decision. They participated in months of negotiations with Pfizer's counsel assisted by David W. Aemmer, the Chief Circuit Mediator for the Tenth Circuit. As a result of these extensive efforts, spanning thousands of hours of work and several years, Proposed Co-Lead Settlement Class Counsel achieved a significant all-cash Settlement of $50 million with Pfizer, which will provide immediate relief to the Settlement Class. This requirement is satisfied.

### E.  Common Questions Predominate over Individual Questions

Predominance is satisfied if "questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3); *see Amgen, Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 459 (2013). "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. The Supreme Court recognizes that predominance is "a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Two questions lie at the heart of this litigation: (1) whether Defendants and Teva conspired and agreed to delay the entry of Teva's AB-rated generic EpiPen in exchange for Mylan's agreement to delay entry of its AB-rated generic Nuvigil; and (2) whether Settlement Class Members paid more for EpiPen, authorized generic EpiPen, and Teva's AB-rated EpiPen

than they would have paid if not for Defendants' alleged conspiracy and agreement to delay the entry of Teva's AB-rated EpiPen. Both questions would be answered with evidence common to all Settlement Class Members.

Defendants either entered into a conspiracy and agreement to delay the entry of Teva's AB-rated generic EpiPen or they did not. This question would be proven (or disproven) class-wide based on Defendants' and Teva's documents and correspondence, the testimony of current and former employees and representatives of Defendants and Teva, and expert testimony. *See, e.g.*, *In re EpiPen,* 2020 WL 1180550, at *54 (finding on contested motion that "[p]laintiffs' experts have presented a plausible method for proving their antitrust claims under a generic delay theory with evidence that applies on a classwide basis"). Furthermore, the harm Settlement Class Members suffered as a result of the alleged conspiracy and agreement would likewise be proven class-wide through expert testimony, transaction-level data produced by Teva and Mylan, Defendants' forecasts and other documents, the testimony of Defendants' current and former employees and representatives, and research articles and governmental publications regarding the effects of generic entry. *See, e.g.*, Lamb Decl. ¶¶ 1, 41-52. The predominance requirement is readily satisfied.

### F. A Class Action is Superior to Other Methods

Rule 23(b)(3) requires that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotation marks omitted); *see also CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014). Where, as here, a court is deciding the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not to be considered. *See Amchem*, 521 U.S. at 619.

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against Defendants. *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Certification avoids numerous individual actions (for those who can afford to sue), prevents inconsistent results, and ensures that Settlement Class Members with smaller claims have an opportunity for redress. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 117 (S.D.N.Y. 2010) ("Many of the class members' claims will be small relative to the high costs of maintaining an antitrust action," and therefore "[s]treamlining the litigation in one forum will simplify the process and avoid inconsistency."). The superiority requirement is satisfied.

### G.  Ascertainability

The Tenth Circuit has not specifically addressed "whether ascertainability is a separate requirement under Rule 23(b)(3)." *In re EpiPen*, 2020 WL 1180550, at *10. But this Court has analyzed the issue and predicted that the Tenth Circuit would adopt a version of ascertainability that requires that a class definition "not be too vague, the class must not be defined by subjective

13

criteria, and the class must not be defined in terms of success on the merits." *Id.* at *11 (quoting *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2016 WL 5371856, at *2–3 (D. Kan. Sept. 26, 2016) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)). Here, the Settlement Class is precisely and objectively defined—an entity's status as a Settlement Class Member is based on whether they purchased EpiPen, authorized generic EpiPen, or Teva's AB-rated EpiPen directly from Mylan or Teva for resale during the Class Period. The Settlement Class is also not defined in terms of success on the merits. This requirement is satisfied.

For these reasons, the Court should preliminarily certify the Settlement Class for settlement purposes only.

## IV. THE SETTLEMENT IS WITHIN THE RANGE OF FAIR, REASONABLE AND ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

Settlement is strongly favored as a method of resolving disputes. This is particularly true in class actions such as the present action. *Sears v. Atchison Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984). Under Rule 23(e), review of a proposed class action settlement is a two-step process. *Motor Fuel*, 258 F.R.D. at 675. At preliminary approval, the Court analyzes whether there is any reason not to proceed with the proposed settlement and notify the class. After the Court preliminarily approves the settlement, the class is notified and provided an opportunity to be heard at the final approval hearing. At the final approval hearing, the Court considers the merits of the settlement to decide if it should be finally approved. *Id.* As Judge Lungstrom recently reaffirmed in *Anderson v. Coca-Cola Bottlers' Ass'n*, courts apply the following standard of review at the preliminary approval stage:

> Because preliminary approval is just the first step of the approval process, courts apply a less stringent standard than that at final approval. District courts have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time. The general rule is that a

> court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval. While the Court will consider the Tenth Circuit's factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.

No. 21-cv-2054, 2023 WL 3159471, at *2 (D. Kan. Apr. 28, 2023) (collecting authorities) (italics in original).

Plaintiffs request the Court to take the first step in this two-step process. "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Motor Fuel*, 258 F.R.D. at 675 (quoting *Am. Med. Ass'n v. United Healthcare Corp.*, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009)). "Although the Court must assess the strength of plaintiffs' claims, it should not decide the merits of the case or resolve unsettled legal questions." *Id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 (1981)).

Rule 23(e)(2), as amended in 2018, dictates that at the final approval stage, Courts should consider whether: (1) "the class representatives and class counsel have adequately represented the class"; (2) "the proposed settlement was negotiated at arm's length"; (3) "the proposed settlement treats class members equitably relative to each other"; and (4) "the relief provided for the class is adequate taking into account (i) the costs, risks, and delay of trial and appeal[,] (ii) the effectiveness of any proposed method of distributing relief to the class, including method of processing class member claims[,] and (iii) the terms of any proposed award of attorney's fees, including timing of payment." *Id.*

These factors largely overlap with the following factors considered by courts in this Circuit prior to the 2018 amendments "whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable." *Anderson*, 2023 WL 3159471, at *2 (collecting authorities). Courts in this District consider the Rule 23(e)(2) factors as "the main tool in evaluating the propriety of [a] settlement," while also addressing the Tenth Circuit's factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

The Settlement for $50 million in cash satisfies each of the Rule 23(e)(2) and Tenth Circuit factors. Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

### A.  Plaintiffs and Proposed Co-Lead Settlement Class Counsel Have Adequately Represented the Class

The adequacy of representation requirement is satisfied where the interests of the representative plaintiffs do not conflict with those of the class members and the representatives, and their counsel have prosecuted the case vigorously. *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010). As described in Section III.D above, the Settlement Class is well represented in this matter. Proposed Co-Lead Settlement Class Counsel are experienced class action antitrust practitioners and they and their co-counsel have vigorously prosecuted this case since its inception. The Settlement was reached after extensive discovery and motion practice, including the filing of Plaintiff's opening brief on appeal, and several rounds of arm's-length negotiations assisted by the Chief Mediator for the Tenth Circuit. This factor weighs in favor of preliminary approval.

### B.  The Settlement Was Reached as a Result of Arm's Length Negotiations Assisted by an Experienced Mediator

The Settlement was reached by experienced counsel after years of litigation, extensive discovery, and months of arm's length negotiations assisted by David W. Aemmer, who has served as the Chief Circuit Mediator for the Tenth Circuit for over a decade.  During those negotiations, proposed Co-Lead Settlement Class Counsel possessed sufficient evidence and knowledge of the claims at issue to make informed decisions regarding the strengths and weaknesses of Settlement Class Members claims and Pfizer's defenses.  This factor weighs in favor of preliminary approval. *See, e.g.*, *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) (finding this factor satisfied where the settlement was reached "by experienced counsel for the class"); *In re Molycorp., Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

### C.  The Settlement Is Excellent Considering the Costs, Risks, and Delay of Trial and Appeal

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be preliminarily approved.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.* ("*EpiPen*"), No. 17-md-2785, 2021 WL 5369798, at *2 (D. Kan. Nov. 17, 2021) (quoting *In re Syngenta AG MIR 162 Corn. Litig.*, No. 14-md-2591, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (recognizing that the "immediate recovery is more valuable than 'the mere possibility' that Class Members might achieve a more favorable

17

outcome 'after protracted and expensive litigation' that may well last 'many years in the future'").

Plaintiffs and Proposed Co-Lead Settlement Class Counsel believe the claims asserted in the litigation against Pfizer have merit. They would not have fought so hard to advance these claims if it were otherwise. But they also recognize the substantial risks involved in continued litigation. The Court dismissed all the claims against Pfizer, and any recovery would have required reversal on appeal of a legal issue that the Court itself recognized other courts disagree about. And, even if they had prevailed on appeal, Pfizer has aggressively maintained that they did nothing wrong, that there was no conspiracy, and that Settlement Class Members were not damaged. Proposed Co-Lead Settlement Class Counsel are also mindful of the inherent burden of proof and possible defenses to the claims asserted in this litigation and recognize the challenges in establishing liability on a class-wide basis through summary judgment and trial in a reverse payment case, such as this matter.

Even were Plaintiffs to prevail on the appeal and survive summary judgment, there is no guarantee Settlement Class Members would receive any recovery from Pfizer at trial. Numerous factual and legal issues remain on which the Settling Parties intensely disagree. Pfizer denies that it has engaged in any wrongdoing, denies any liability whatsoever for any of the claims alleged by Plaintiffs, and denies that Plaintiffs have suffered any injuries or damages.

Prosecuting this litigation through class certification, summary judgment, trial, and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g., In re Austrian &amp; German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings

necessary to litigate this matter to final judgment would likely include substantial motion practice, class certification proceedings, dispositive motions and, of course, a trial and appeal. Given the complex nature of the antitrust claims at issue, a battle of the experts at class certification, summary judgment, and trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant related motion practice.  Considering the amount of money at stake, any decision on the merits would likely be appealed, causing further delay, as it would require briefing and likely oral argument.

The Settlement, in contrast, delivers a real and substantial remedy to the Settlement Class, following a defeat on the merits and unresolved appeal, without the risk and delay inherent in prosecuting this matter through trial and appeal.  Thus, this factor favors approval of the settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted).

This factor favors preliminary approval of the Settlement.

### D.  The Method for Distributing Relief Supports Preliminary Approval

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The Notice Program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members.  All known Settlement Class Members will be mailed direct notice of the Settlement.  To claim a portion of the Settlement Fund, Settlement Class Members need only complete and submit a Claim Form and provide appropriate documentation

19

(online or through mailing).  All submitted Claim Forms will be processed by A.B. Data, Ltd., an experienced class action administration firm.  After payment of Administration Expenses and attorneys' fees, costs, expenses, and service awards approved by the Court, all amounts remaining in the Settlement Fund (plus interest) will be distributed *pro rata* in accordance with the Plan of Allocation to Settlement Class Members who submitted a valid Claim Form. This favors preliminary approval of the Settlement.

### E.   The Terms of the Proposed Attorneys' Fee Award Support Preliminary Approval

Rule 23(e)(2)(C)(iii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment."

The terms of the proposed attorneys' fee award are consistent with class action best practices. The amount of any attorneys' fee award is intended to be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 11. The Settlement is not contingent on the amount of any fee award, and the attorneys' fee award shall be paid from the Settlement Fund no later than seven days following the Effective Date of the Settlement—there is no quick-pay provision in the Settlement.  *Id.*  The Settlement provides that Plaintiffs intend to seek an attorneys' fee award of up to 33 1/3% of the gross Settlement Fund plus interest accrued thereon, and the Notices advise Settlement Class Members of that fact.  *Id.*  Consistent with Rule 23(h), pursuant to the proposed schedule set forth below, Plaintiffs' Motion for Final Approval of the Settlement and Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Class Representative Service Awards shall be filed no later than 21 days prior to the deadline for Settlement Class Members to object to Plaintiffs' attorneys' fee request.

These provisions further support preliminary approval.

### F.  Class Members Are Treated Equitably

Rule 23(e)(2)(D) looks at whether class members are treated equitably.  Pursuant to the Allocation Plan, the net Settlement Fund will be distributed *pro rata* to Settlement Class Members submitting a valid Claim Form based on the volume of EpiPen, authorized generic EpiPen, and Teva's AB-rated EpiPen purchased with a modifier applied to brand or generic purchases—to account for the fact that damages stemming from purchases of brand EpiPen were higher than those stemming from its generic equivalent, authorized generic EpiPen and Teva's AB-rated EpiPen. Because all Settlement Class Members are treated alike, this requirement is satisfied.

### G.  The Settlement Is Fair and Reasonable

The final, additional factor courts in the Tenth Circuit consider is "the judgment of the parties that the settlement is fair and reasonable."  *Chavez Rodriguez*, 2020 WL 3288059 at *2. Courts recognize that the recommendation of a settlement by experienced counsel is entitled to great weight.  *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at * 14 (D. Colo. Sept. 9, 2019); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight").

Proposed Co-Lead Settlement Class Counsel are experienced antitrust class action practitioners and agreed to settle this case after extensive discovery and investigation and months of negotiations assisted by David W. Aemmer, Chief Circuit Mediator for the Tenth Circuit. Proposed Co-Lead Settlement Class Counsel believe the Settlement represents an excellent result for the Settlement Class and is fair, reasonable, and adequate.  Plaintiffs respectfully submit the Settlement should be preliminarily approved.

## V.      THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

### A.  The Court Should Preliminarily Approve the Proposed Notice of Settlement

Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). When certifying a Rule 23(b)(3) class, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2).

The Notice Program includes: (1) direct Notice to every known Settlement Class Member via first-class U.S. Mail as well as a reminder notice by mail; (2) publication notice to be disseminated as a news release in *Business Wire*, for 30 days on the Pink Sheet website, and once in the *Wall Street Journal*; (3) a settlement website established to allow Settlement Class Members to obtain information regarding the Settlement; and (4) a toll-free number to provide Settlement Class Members with information regarding the Settlement. Schachter Decl. ¶¶ 1–15, attached hereto as Exhibit 7. The Notice Program readily satisfies the "best practicable" standard.

The Notice documents were designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights. Specifically, the Notice describes (1) the nature of the proposed settlement and the proposed Plan of Allocation; (2) the nature and extent of the release of claims; (3) Class Counsel's intent to request attorney's fees and expenses; (4) the method for submitting a proof of claim; (5) the procedure and timing for objecting to the Settlement; (6) the date, time, and place of the Final Approval Hearing; and (7) ways to receive additional information about the litigation and the

proposed Settlement.  *See* Schachter Decl. ¶ 8; *see also* Long-Form Notice, attached hereto as Exhibit 3; Short Form Notice, attached hereto as Exhibit 5. The Notices also provide Settlement Class Members with a toll-free telephone number, email address, and a settlement website where Settlement Class Members may obtain additional information. *See id.* The Notices are reasonably calculated to apprise Settlement Class Members of the pendency of the Settlement and to afford them a fair opportunity to object.  *See Mullane v. Cen. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Accordingly, the form of the proposed Notice meets the requirements of Rule 23 and due process.

**B.  Appointment of A.B. Data, Ltd., to Serve as the Settlement Administrator Is Proper**

Plaintiffs request that the Court appoint A.B. Data, Ltd., to serve as the Settlement Administrator, which includes providing notice of the settlement and administering the claims process and distribution of the Net Settlement Fund.  A.B. Data, Ltd., is a highly experienced and well-qualified class action administrator. *See* Schachter Decl. Exhibit A.

**C.  Appointment of Huntington Bank as Escrow Agent Is Proper**

Plaintiffs request that the Court appoint Huntington Bank as Escrow Agent.  Huntington is the country's leading bank for qualified settlement funds ("QSFs"). During the last 20 years, its National Settlement Team has handled more than 4,500 QSFs with over $70 billion and 180 million checks. Based on Huntington Bank's experience and familiarity with performing the services of an escrow agent, Proposed Co-Lead Settlement Class Counsel are confident that it will properly perform the duties of Escrow Agent as ordered by the Court.

**D.  Proposed Schedule of Settlement Events**

If the Court grants preliminary approval of the Settlement, the Settling Parties respectfully submit the following proposed procedural schedule:

| Event | Deadline |
|---|---|
| Settlement Administrator to mail notice and claim form to known Settlement Class Members | 21 days following entry of the Preliminary Approval Order |
| Settlement Administrator to cause digital notice to be published (in *Business Wire*, the Pink Sheet website, and *Wall Street Journal*) | 35 days following entry of the Preliminary Approval Order |
| Settlement Administrator to mail reminder notice to known Settlement Class Members | 49 days following the entry of the Preliminary Approval Order |
| Claims Deadline | 112 days following entry of the Preliminary Approval Order |
| Final Approval Motion and Fee Petition | 49 days before Final Approval Hearing |
| Deadline to Object to or Opt-Out of the Settlement | 28 days before Final Approval Hearing |
| Plaintiffs' Responses to any objections to the Settlement, Fee Petition, or Allocation Plan | 14 days before Final Approval Hearing |
| Final Approval Hearing | Jan. 15, 2024, or as soon thereafter as is convenient for the Court |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Honorable Court enter an Order: (1) granting preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class for settlement purposes only; (3) approving the Notice Program, as set forth in the Declaration of Eric Schachter attached hereto as Exhibit 7, and the commencement of notice to the Settlement Class as set forth in the Notice Program; (4) appointing A.B. Data, Ltd. as the Settlement Administrator; (5) appointing Huntington Bank as the Escrow Agent; (6) appointing KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc, FWK Holdings LLC, and César Castillo, LLC as Representative Plaintiffs; (7) appointing Michael L. Roberts and Linda P. Nussbaum as Co-Lead Settlement Class Counsel; (8) appointing Bradley T. Wilders as Liaison Counsel; (9) approving as to form and content the Long-Form Notice, Claim Form, Summary Notice, and Reminder Notice, attached hereto as Exhibits 3, 4, 5, and 6, respectively; (10) approving the proposed Plan of Allocation, attached as Exhibit 8 to the Settlement; and (11) scheduling a Final Approval Hearing to consider entry of a final order approving the Settlement, final certification

of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs,

and expenses, and Representative Plaintiff service awards. An agreed proposed Preliminary

Approval Order, submitted in Word format, is provided herewith.

Date: October 10, 2023

Respectfully submitted,

*/s/ Bradley T. Wilders*

Norman E. Siegel
Bradley T. Wilders
Jordan A. Kane
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
siegel@steuevesiegel.com
wilders@steuevesiegel.com
kane@steuevesiegel.com

*Interim Liaison Counsel for the putative DPP Class*

Michael L. Roberts
Erich P. Schork
Sarah E. DeLoach
ROBERTS LAW FIRM US, PC
1920 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (501) 952-8558
mikeroberts@robertslawfirm.us
erichschork@robertslawfirm.us
sarahdeloach@robertslawfirm.us

*Interim Co-Lead Counsel for the putative DPP Class*

Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1133 Avenue of the Americas, 31st Floor
New York, NY 10036
Telephone: (917) 438-9102
lnussbaum@nussbaumpc.com

*Interim Co-Lead Counsel for the putative DPP Class*