IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KPH HEALTHCARE SERVICES, INC., a/k/a KINNEY DRUGS INC., FWK HOLDINGS LLC, AND CÉSAR CASTILLO, LLC, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MYLAN, N.V., MYLAN PHARMACEUTICALS INC., MYLAN SPECIALTY L.P., PFIZER, INC., KING PHARMACEUTICALS LLC, and MERIDIAN MEDICAL TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 20-2065-DDC-TJJ |

**ORDER GRANTING FINAL APPROVAL OF THE SETTLEMENT, AWARDING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS, <u>AND APPROVING PLAN OF ALLOCATION</u>**

This matter comes before the court on plaintiffs KPH Healthcare Services, Inc., FWK Holdings LLC, and César Castillo, LLC, on behalf of themselves and the certified Direct Purchaser Settlement Class's (together "DPPs" or "plaintiffs") motion seeking: (a) final approval of the Settlement; (b) for awards of attorneys' fees and expenses; and (c) approval of the Plan of Allocation of the Settlement proceeds (together the "motion") set forth in the DPPs's Motion for Final Approval of Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards[1] (Doc. 403). Defendants Pfizer, Inc., King

---

[1] Plaintiffs since have withdrawn their request for service awards for Plaintiff Class Representatives. *See* Doc. 409. The court discusses this development further, below.

Pharmaceuticals LLC, and Meridian Medical Technologies, Inc. (collectively, "Pfizer") have not opposed the motion and no Class Member has filed an objection to the motion.  The court, after considering all papers filed and proceedings conducted in this action, and after finding that the Settlement of this Litigation against Pfizer is fair, reasonable, and adequate, and otherwise fully informed about this action, grants the motion.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. DPPs seek final approval of the Settlement.[2]  Rule 23(e) permits the parties to settle the claims of a certified class action, but "only with the court's approval."  And, the court may approve a settlement only after conducting "a hearing" and finding that the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).  Also, the Rule includes several factors that courts should consider when deciding whether the settlement is "fair, reasonable, and adequate[.]" *Id.*  These factors include whether:

   (A) the class representatives and class counsel have adequately represented the class;
   (B) the proposal was negotiated at arm's length;
   (C) the relief provided for the class is adequate, taking into account:
      (i) the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
   (D) the proposal treats class members equitably relative to each other.

*Id.*  Also, the Tenth Circuit has noted four factors that a district court must consider when assessing whether a proposed settlement is "fair, reasonable, and adequate":

   (1) whether the proposed settlement was fairly and honestly negotiated;

---

[2] This Order uses and incorporates by reference the definitions for defined terms used in the Settlement Agreement dated October 10, 2023 (Doc. 372-2).  All capitalized terms used, but not defined in this Order, shall have the same meanings used in the Settlement Agreement.

2

> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The court previously granted preliminary approval of the Settlement, finding it "fair, reasonable, and adequate" as Fed. R. Civ. P. 23(e) requires. Doc. 394 at 4. Now, the court grants final approval of the Settlement under this Rule because DPPs have shown that each of the Rule 23(e)(2) and Tenth Circuit factors is met here.

The Settlement satisfies each of the Rule 23(e)(2) factors. *First*, the court finds that DPPs and Co-Lead Counsel have represented the Class adequately. Plaintiff Class Representatives share the same interests and the same types of alleged injuries as other Class Members. They have participated in extensive discovery, and they have adequately represented the interests of the Class. Also, Co-Lead Counsel has represented the certified Class adequately by prosecuting their claims. Their work has involved investigating the claims, drafting the Complaints, defending Motions to Dismiss, reviewing written discovery, consulting with experts, successfully moving for class certification, and mediating the case to resolution. Counsel's prosecution of the case has produced substantial relief to the certified Class through the negotiated Settlement. In sum, the court concludes that Co-Lead Counsel has represented the Class adequately. Thus, this first Rule 23(e)(2) factor favors approving the Settlement.

*Second*, the Settlement is the product of an arm's length negotiation. The parties engaged an experienced and skilled mediator who conducted mediation sessions with the Settling Parties and their counsel. Through that mediation process, the parties successfully negotiated the

Settlement that DPPs ask the court to approve. The court finds that the second Rule 23(e)(2) factor favors approval.

*Third*, the court finds that the relief provided to the Class through the Settlement is adequate. Continued litigation of the matter involves incurring additional costs, presents risk that Class Members might secure an unfavorable outcome, and guarantees DPPs continued appeal of the case. Continued litigation thus will delay any recovery that Class Members may achieve in the future. As discussed in more detail below, the court finds that the proposed Plan of Allocation and the requested attorneys' fees award is fair and adequate. And, DPPs represent that the Settling Parties have no other agreements that the court must consider under Rule 23(e)(2)(C)(iv). Thus, the court finds that the third Rule 23(e)(2) factor favors approving the Settlement.

*Fourth*, and as discussed more fully below, the court finds that the Settlement and the Plan of Allocation treat Class Members equitably relative to one another. So, this fourth Rule 23(e)(2) factor also favors approval. In sum, all four Rule 23(e)(2) factors favor the court granting final approval of the Settlement.

Also, the court finds that the Settlement satisfies the Tenth Circuit's test for assessing whether a proposed settlement is fair, reasonable, and adequate. *First*, and as just discussed, the court finds that the Settlement "was fairly and honestly negotiated[.]" *Rutter*, 314 F.3d at 1188. *Second*, the litigation involves "serious questions of law and fact" that place "the ultimate outcome of the litigation in doubt[.]" *Id.* The parties ardently have disputed issues of liability and damages. While the court granted Pfizer's Motion to Dismiss, Doc. 241-1, DPPs appealed to the Tenth Circuit. *See* Doc. 349 (Notice of Interlocutory Appeal). Had the parties not settled, that appeal would continue until the court or a jury decides the matter, placing the ultimate

4

outcome of the appeal—and thus the case—in doubt. And, despite reaching a settlement agreement, Pfizer continues to contest any liability on DPPs's antitrust claims. Also, Pfizer denies that DPPs have sustained damage or injury. These serious questions of law and fact place the ultimate outcome of the litigation in doubt. *Third*, "the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[.]" *Id.* The Settlement provides the Class Members with immediate recovery for claimed injuries allegedly derived from purchases of EpiPens. And this immediate recovery is more valuable than a "mere possibility" that Class Members might achieve a more favorable outcome "after protracted and expensive litigation" that may well last "many years in the future." *See In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-md-2591, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) ("[I]t is reasonable to believe that the immediate recovery of such a substantial sum is more valuable than the mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future."). *Last*, the Settling Parties ask the court to approve the Settlement, which suggests that "the judgment of the parties" is "that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188. Thus, all of the Tenth Circuit's factors favor approval of the Settlement.

Also, and as the court discusses in the contemporaneously-filed Final Judgment and Order of Dismissal (Doc. 415), no Class Member has submitted any objection to the Settlement. So, no submissions preclude the court from finding the Settlement is fair, reasonable, and adequate.

For all the reasons discussed, the court finds that the Settlement is fair, reasonable, and adequate. It thus grants final approval of the Settlement under Fed. R. Civ. P. 23(e).

2. The Notice given to the Class stated that Class Counsel would move the court for an award of attorneys' fees not to exceed one-third of the Settlement Amount, an award of their expenses, and for approval of the proposed Plan of Allocation. The Notice fairly and adequately notified Class Members of their right to object to the requests for attorneys' fees, expenses, and approval of the proposed Plan of Allocation, and a full and fair opportunity was accorded to all persons and entities who are Class Members to be heard with respect to these matters.

3. The motion requests an award of attorneys' fees equal to one-third of the Settlement Amount, an award of plaintiffs' counsel's expenses in the amount of $536,157.61, payment of $64,668.11 to the Notice Administrator for implementation of the Class notice plan, and approval of the proposed Plan of Allocation. No Class Member has objected to these requested awards nor the Plan of Allocation. As set forth in this Order, the court grants the motion. As explained below, the court grants the requests for an award of attorneys' fees, an award of expenses, and the payment to the Notice Administrator. And, the court finds the Plan of Allocation appropriate, and it approves that Plan of Allocation.

## AWARD OF ATTORNEYS' FEES

4. Plaintiff Class Representatives and Co-Lead Counsel request an award of attorneys' fees of one-third of the $50 million Settlement Amount, which amounts to $16,666,667, together with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

5. Under Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The attorneys' fees requested and awarded here are authorized under the common fund doctrine, *see Boeing Co. v. Van Gemert*,

444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."), and by the parties' Settlement Agreement (which the court has approved by separate order). It expressly provides for an award of attorneys' fees and expenses to be paid from the Settlement Fund to Class Counsel for work performed for the benefit of the Class Members. *See* Doc. 372-2 at 13–14 (Settlement Agreement at ¶ 11).

6. The Tenth Circuit prefers the percentage-of-the-fund method when determining the award of attorneys' fees in common fund cases, *see Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458–59 (10th Cir. 2017), which calculates the fee as a reasonable percentage of the value attained for the benefit of the class, *see Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The Tenth Circuit also has instructed that a court making a percentage fee award in a common fund case should analyze the reasonableness of the fee award under the *Johnson* factors. *See id.* at 454–55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The weight given to each *Johnson* factor varies from case to case, and each factor may not always apply. *See id.* at 456 (finding that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation").

7. The court finds that the request for and an award of attorneys' fees in the amount of one-third of the Settlement Amount is reasonable and supported by the *Johnson* factors. The court addresses each applicable factor, in order of importance.

8. **Results Obtained (Factor 8).** The court finds that the result-obtained factor here deserves greater weight than the other *Johnson* factors. *See id.* (holding a court may give this factor greater weight when "the recovery was highly contingent" and "the efforts of counsel were

7

instrumental in realizing recovery on behalf of the class"); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." (citation and internal quotation marks omitted)).  The amount involved was disputed, both in liability and damages, and hotly contested by Pfizer.  The result is a $50 million recovery, which is substantial, guaranteed, non-reversionary, and only partially resolves the case because the certified Class still is pursuing the joint and several recovery of their damages against the Mylan Defendants.  The Net Settlement Funds will be distributed to the Class with no funds reverting to Pfizer.  The court finds that the result attained heavily favors awarding the one-third fee award.

        9.        **<u>Customary Fee (Factor 5) and Awards in Similar Cases (Factor 12)</u>.**  Class actions "typically involve a contingent fee arrangement because it insulates the class from the risk of incurring legal fees and shifts that risk to counsel."  *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1250 (D. Kan. 2015) (citation omitted).  Our court consistently has recognized that a "one-third fee is customary in contingent-fee cases (factor 5)," *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113–14 (D. Kan. 2018), and "well within the range typically awarded in class actions[,]" *Nieberding*, 129 F. Supp. 3d at 1250.  In fact, in cases with increased complexity and risk, the fee awards often are higher than one-third of the common fund attained.  *See Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029, 2019 WL 2185081, at *2–3 (D. Kan. May 21, 2019) (citing fee awards in the Tenth Circuit based on 40% of the common fund).  And in our court, an attorneys' fee award of one-third is consistent with fees awarded in comparably high-risk, high potential damage, complex class actions resulting in creation of a common fund, such as the one here.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785, 2022 WL

2663873, at *4–5 (D. Kan. July 11, 2022) (awarding 33.33% attorneys' fees on a $264 million class recovery); *In re Syngenta*, 357 F. Supp. 3d at 1113–14 (awarding 33.33% attorneys' fees on a $1.51 billion class recovery); *In re Urethane Antitrust Litig.*, No. 04-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding 33.33% attorneys' fees on a $835 million class recovery); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300, 2012 WL 5306260, *1, 7–8 (D. Kan. Oct. 26, 2012) (awarding 33.33% attorneys' fees on a $54 million class recovery). The court concludes that the requested fee of one-third is customary and consistent with awards in similar cases, and thus supports a fee award in the amount of one-third of the Settlement Amount.

10. **Contingent Fee Arrangement (Factor 6) and Desirability (Factor 10).** The court recognizes the significant risk Class Counsel has assumed in prosecuting this complex antitrust case on a wholly contingent basis. They necessarily and reasonably expended a large amount of time (more than four years and millions of dollars in attorney time) and money (more than $500,000 dollars in expenses) with a "substantial risk of no recovery[.]" *In re Syngenta*, 357 F. Supp. 3d at 1114; *see also* Doc. 404-1 at 19–20 (Roberts Decl. ¶¶ 60–61). The court finds that the risk of huge expenditures on a contingent basis and a substantial risk of no recovery favors the requested one-third fee award. *See In re Syngenta*, 357 F. Supp. 3d at 1114 (finding that the case was "less than desirable (factor 10)" when "plaintiffs' counsel risk[ed] huge expenditures on a contingent basis, with a substantial risk of no recovery").

11. **Novelty and Difficulty (Factor 2); Skill (Factor 3); and Experience (Factor 9).** Class actions have "a well deserved reputation as being most complex[,]" *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), and "[a]n antitrust class action is arguably the most complex action to prosecute[,]" *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000). The antitrust claims asserted in this class action involved complex and closely

contested issues of class certification and substantive law requiring highly skilled and experienced attorneys.  The case has required DPPs's counsel to draft multiple Complaints, defend against multiple Motions to Dismiss, and pursue an appeal to the Tenth Circuit.  Class Counsel litigated these issues vigorously for more than four years against highly skilled, competitive, and well-funded defense counsel.  These efforts required Class Counsel to engage in extensive document discovery, as well as significant motion practice.  Class Counsel continue to navigate the complexities of this complex antitrust litigation against Mylan.  The court has observed the skill and zeal Class Counsel has applied to prosecute this case, and it finds that they are experienced, have good reputations, and have performed exceptional legal work on behalf of their clients and the Class.  These factors strongly support the requested fee.

12. **Time and Labor (Factor 1).**  This factor guides the lodestar analysis in a statutory fee-shifting case, but has minimal importance in a percentage of the common fund case.  *See Nakamura*, 2019 WL 2185081, at *3.  In fact, a lodestar analysis (or crosscheck) is neither required nor needed to assess reasonableness in a percentage of the fund determination.  *See id.* (first citing *Brown*, 838 F.2d at 456 n.3; then citing *Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29, 2018 WL 2296588, at *3 (E.D. Okla. Mar. 27, 2018) (neither lodestar analysis nor lodestar cross-check is required); then citing *Childs v. Unified Life Ins. Co.*, No. 10-CV-23, 2011 WL 6016486, at *15 n.10 (N.D. Okla. Dec. 2, 2011) ("Because the other *Johnson* factors, combined, warrant approval of the common fund fee sought by class counsel, the Court need not engage in a detailed, lodestar-type analysis of the 'time and labor required' factor.")).

Still, this was not a case that settled before counsel completed significant work in prosecuting the claims.  To the contrary, as shown in the Declaration of Michael Roberts, Co-Lead Counsel, this litigation has required a significant amount of time and labor by Class Counsel.  Doc.

10

404-1 at 19–20 (Roberts Decl. ¶¶ 60–61) (summarizing hours worked and expenses accrued by each firm). Also, counsel has assured the court that Co-Lead Counsel properly vetted the time recorded and submitted by all counsel. And, Co-Lead Counsel represents that the time records comprising the lodestar calculation comply with directives for keeping time and expense records that the court imposed at the case's outset. *See* Doc. 306 at 4–5 (Order Appointing Counsel) (requiring Co-Lead Counsel and Liaison Counsel, among other things, to collect "from each firm regular time and expense reports," to review the reports for appropriate effort and duplicity, and "to encourage efficiency among all the direct purchaser plaintiffs' counsel"). Thus, the court finds that the time and labor factor, to the extent this factor is relevant in a percentage-of-the-fund case, favors awarding a one-third fee.

13.     **Preclusion of Other Employment (Factor 4).** When "an attorney is spending time on one case, he is not spending the same time on another case." *Wiggins v. Roberts*, 551 F. Supp. 57, 61 (N.D. Ala. 1982). Co-Lead Counsel have represented that prosecuting this litigation has precluded other employment opportunities for them. Doc. 404-1 at 23 (Roberts Decl. ¶ 78). The court has little difficulty concluding that the commitment of time and resources required to litigate this case, over more than four years of its pendency, likely limited Class Counsel's ability to pursue other engagements. *See Nakamura*, 2019 WL 2185081, at *4. This factor also supports the requested one-third fee.

14.     The other two *Johnson* factors—time limitations imposed by the client or circumstances (Factor 7) and nature and length of the professional relationship with the client (Factor 11)—are of no or nominal importance in this class action, percentage-of-the-fund fee award. The court thus doesn't address them.

11

15. For all these reasons, the court concludes that the *Johnson* factors strongly support and warrant an award of attorneys' fees in the amount of one-third of the $50 million Settlement Amount. Accordingly, the court awards attorneys' fees from the Settlement Fund of $16,666,667, together with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

## AWARD OF LITIGATION EXPENSES

16. Rule 23(h) authorizes courts to reimburse counsel for "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Also, the Settlement Agreement provides that "Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all costs, fees and expenses including, but not limited to, all Administrative Expenses," Doc. 372-2 at 12–13 (Settlement Agreement ¶ 9), and provides that "expenses shall be paid from the Settlement Fund[,]" *id.*

17. As of April 30, 2024, Class Counsel have incurred expenses and charges ("expenses") in prosecuting this case in the amount of $536,157.61. *See* Doc. 404-1 at 19–20 (Robert Decl. ¶ 61). No Class Member has objected to counsel's request for an award of these expenses from the Settlement Fund. The court finds these expenses are reasonable and were necessary to conclude this case successfully against the Pfizer Defendants. Thus, the court awards expenses to Co-Lead Counsel in the amount of $536,157.61, with the interest earned on that amount for the same period and at the same rate earned on the Settlement Fund until paid.

18. The motion also requests the court approve and order payment from the Settlement Fund of $64,668.11 to the Notice and Settlement Administrator, A.B. Data., Inc., for implementing the Class notice plan commenced on April 24, 2024, as directed by the court's March 28, 2024, Order (Doc. 393), as amended by the court's April 3, 2024, Order (Doc. 394).

The court finds that the requested payment is a reasonable and necessary case expense, and it orders payment from the Settlement Fund to A.B. Data, Inc. in the amount of $64,668.11.  Doc. 404-7 at 2, 3, 32 (Hanson Decl. ¶¶ 2, 5).

## **AWARD OF SERVICE AWARDS**

19.Co-Lead Counsel originally requested that the court award $5,000 to each of the three Plaintiff Class Representatives as service awards for the time they spent and personal risk they incurred representing the Class.  At the June 25, 2024, final approval hearing, the court expressed concern about plaintiffs' requested service awards.  Specifically, the court referenced *Chieftain Royalty Company v. Enervest Energy Institutional Fund XIII-A, L.P.*'s mandate prohibiting district courts from awarding service awards based on generalized references and descriptions of the work that class representatives had provided.  888 F.3d 455, 469 (10th Cir. 2017) (holding requests for service awards "must be supported by sufficient evidence in the record" and denying plaintiff's request for service award when "counsel spoke broadly about the tasks [plaintiff] had performed" and "offered only approximations and generalities," instead of "detailed contemporaneous records").  The court granted Co-Lead Counsel leave to supplement the record with more specific, quantifiable descriptions of the time and effort Plaintiff Class Representatives devoted to the case.  Later that day, plaintiffs filed a Notice, informing the court that they "decided to voluntarily withdraw their request for service awards from the common fund created by the Pfizer settlement."  Doc. 409 at 1.  The court heeds this Notice and thus doesn't address the originally requested service awards in this Order.  Because plaintiffs no longer seek service awards for Plaintiff Class Representatives, this Order, approving the Settlement Agreement, does not reach plaintiffs' now abandoned service awards because they are moot.

13

### APPROVAL OF PLAN OF ALLOCATION

20. The court finds and concludes that the method for the calculation of Class Members' claims that is set forth in the Plan of Allocation (Doc. 372-9) and described in the Notice disseminated to Class Members provides a fair, reasonable, and adequate basis upon which to allocate the proceeds of the Net Settlement Fund established by the Settlement Agreement among the Class Members, with due consideration for administrative convenience and necessity.

21. DPPs have explained adequately the basis for allocating the Settlement Funds based on each Class Member's *pro rata* share of combined net unit purchases of brand, authorized generic, and generic EpiPen. Under the Plan, claimants may submit records showing purchases of brand, authorized generic, or generic EpiPen during the relevant time period (March 13, 2014, through March 28, 2024 (the date the court entered the Preliminary Approval Order)). Doc. 372-9 at 6 (Plan of Allocation ¶¶ 13–14). The Settlement Administrator then will divide the claimant's qualifying purchases by the combined total qualifying purchases for all Claimants and apply a multiplier to brand purchases and another multiplier to generic purchases, accounting for the difference in alleged damages between brand drug purchases and generic drug purchases. *Id.* The court notes that no Class Member has objected to the *pro rata* allocation.

22. The court thus finds that "competent and experienced class counsel" have formulated the Plan of Allocation, and they have provided a "reasonable, rational basis" for that Plan of Allocation. *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006). Thus, the court finds that the Plan of Allocation, as set forth in Doc. 372-9 and the Notice, is in all respects, fair, reasonable, and adequate and hereby approves the Plan of Allocation.

**CONCLUSION**

23.     The attorneys' fees and expenses herein awarded shall be allocated and distributed among counsel working for the Class by Co-Lead Counsel using their judgment to compensate each counsel fairly based on their contribution to the institution, prosecution, and resolution of the Litigation against the Pfizer Defendants.

24.     The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Class Counsel within ten (10) days of the court's execution of the Final Judgment and Order of Dismissal with Prejudice against Pfizer Defendants Only (the "Judgment") and this Order and subject to the terms, conditions, and obligations of the Settlement Agreement, and in particular, Section 7 thereof, which terms, conditions, and obligations are incorporated into this Order.  Doc. 372-2 at 9–10 (Settlement Agreement ¶ 7).

25.     The Judgment is final and appealable.

26.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void to the extent provided in the Settlement Agreement and shall be vacated in accordance with the Settlement Agreement.

27.     The court retains jurisdiction, to the extent permitted by law, over matters that are the subject of this Order until after full disbursement of the Settlement, and as necessary to effectuate the terms of the Settlement Agreement relating to attorneys' fees, expenses, and Plan of Allocation.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the DPPs's Motion for Final Approval of Settlement, Approval of Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Service Awards (Doc. 403) is granted, consistent with this Order.

**IT IS SO ORDERED.**

**Dated this 9th day of July, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
